[No. B069065. Second Dist., Div. Four. Apr. 28, 1994.]

GARY COOPER, Plaintiff and Appellant, v.
RYKOFF-SEXTON, INC., et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

*Part II of this opinion, which deals with a routine procedural issue, is not certified for publication.

**COUNSEL**

Brian M. Brown for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Martin C. Washton and Jeffrey F. Webb for Defendants and Respondents.

**OPINION**

**KLEIN (Brett), J.***—Plaintiff Gary Cooper appeals from a summary judgment in his employment termination action against respondents S.E. Rykoff & Co., Rykoff-Sexton, Inc., and Sam Wiley. We reverse.

Plaintiff's job was to repair commercial dishwashing machinery. After he was fired, he claimed breach of an implied agreement not to fire him without cause; breach of the implied covenant of good faith and fair dealing; and age discrimination. The issue presented is whether, as a matter of law, plaintiff's claims are barred by material omissions in his employment application. The employer discovered these omissions during the litigation.

I.

The employer's motion for summary judgment had a single basis: that plaintiff could not complain his firing was unlawful, because he had, in his application for employment nearly 10 years earlier, made material omissions.

Defendants' position was stated clearly in their moving papers in the trial court: "It does not matter whether an employee can establish that his or her

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.

employer breached its contract with the employee or unlawfully discriminated against the employee (which defendants vehemently deny in this case). Even if an employee can prove such claims, the employee is not entitled to any remedy and the employer is entitled to summary judgment if the employee materially falsified his or her employment application."

In support of this proposition, defendants rely upon numerous federal cases said to follow the lead of *Summers* v. *State Farm Mut. Auto. Ins. Co.* (10th Cir. 1988) 864 F.2d 700. In *Summers*, an insurance adjuster was fired for falsifying claims documents and poor job performance. The employer's further examination of its claims files after the adjuster was fired revealed that the falsifications were considerably more widespread than had been realized. The court held the employer was entitled to summary judgment on the strength of the facts learned during the further examination, notwithstanding that those facts had not formed a basis for the decision to fire the employee.

A number of federal courts, mostly overlooking the distinction between on-the-job misconduct and resumé falsification, have regarded *Summers* as support for the broad proposition that after-acquired evidence of employment-application falsification can be used to defeat discrimination claims on the theory the employee, having obtained employment fraudulently, had no right to complain of deprivation of continued employment.

Many of those decisions probably reached the correct result on their facts. Three cases are illustrative. In *Mathis* v. *Boeing Military Airplane Co.* (D.Kan. 1989) 719 F.Supp. 991, the employee, a clerk-typist, was fired after approximately two years. In her employment application, she had concealed the facts that she had been fired by four employers in the preceding three years and had been convicted of feloniously defrauding a state agency. In *Churchman* v. *Pinkerton's Inc.* (D.Kan. 1991) 756 F. Supp. 515, the employee, a security guard, quit after approximately a year. In her employment application, she had concealed the facts that she had abused drugs; had been hospitalized 6 months earlier after attempting suicide by drug overdose; had held 12 different jobs in 10 years; and had recently been fired from her latest job. In *Washington* v. *Lake County* (7th Cir. 1992) 969 F.2d 250, the employee, a sheriff's department jailer, was fired after 10 months. In his employment application, he had concealed two criminal convictions.

One case, which also followed *Summers*, stands out because it seems to lie at the opposite factual extreme. In *O'Driscoll* v. *Hercules, Inc.* (D.Utah 1990) 745 F.Supp. 656, affirmed (10th Cir. 1994) 12 F.3d 176, the employee was fired after six years' labor at the Bacchus Works. (The opinion did not

describe the nature of this work.) She sued for age discrimination. The employer moved for summary judgment on the ground she had understated her age by five years when applying for the job. Her age discrimination claim was held properly dismissed on summary judgment, apparently on the basis of the employer's showing that if it had known her true age at the outset, it never would have hired her.

Many of the courts have accepted an analogy posited in *Summers*: "The present case is akin to the hypothetical wherein a company doctor is fired because of his age, race, religion, and sex and the company, in defending a civil rights action, thereafter discovers that the discharged employee was not a 'doctor.' In our view, the masquerading doctor would be entitled to no relief, and Summers is in no better position." (864 F.2d at p. 708.)

In fact, the analogy is inapposite in most of the cases. It would have applied most closely in *Smith* v. *General Scanning, Inc.* (7th Cir. 1989) 876 F.2d 1315, but the court ruled the other way. (*Smith* was decided five months after *Summers* but did not cite it.) There a sales engineer was fired after three years' employment, as part of a reduction in force. He claimed age discrimination. The trial court granted summary judgment, in part on the ground the employee had falsely claimed in his resumé that he held bachelor's and master's degrees in mechanical engineering. The court of appeals disapproved this decision, reasoning that ". . . the district court's analysis focuses too much on Smith's qualifications rather than on his actual performance. Where, as here, a long-term employee is involved, the 'more appropriate' inquiry is performance, into which the question of qualifications merges." (876 F.2d at p. 1320.) The summary judgment was nonetheless affirmed on the ground the employer had shown it had several legitimate and nondiscriminatory reasons for the termination.

Two federal circuits have rejected the resumé-falsification defense as a complete bar to recovery, while recognizing that the measure of damages can be affected if the employer can prove it would eventually have discovered the falsification even in the absence of the litigation. (*Kristufek* v. *Hussmann Foodservice Co.* (7th Cir. 1993) 985 F.2d 364; *Wallace* v. *Dunn Constr. Co.* (11th Cir. 1992) 968 F.2d 1174; accord, *Massey* v. *Trump's Castle Hotel & Casino* (D.N.J. 1993) 828 F.Supp. 314.)

We decline to adopt a blanket rule that material falsification of an employment application is a complete defense to a claim that the employer, while still unaware of the falsification, terminated the employment in violation of the employee's legal rights. Our reason is grounded in the facts of the case. Plaintiff's unrebutted evidence showed the following. Rykoff hired

him in 1981. He satisfactorily performed his job for 10 years. For 10 years Rykoff never had reason to discipline him. Rykoff had an unwritten policy that advance authorization was required for overtime work. On October 15, 1990, Rykoff dispatched plaintiff to fix commercial dishwashing equipment at a department store. So he could serve the customer promptly, plaintiff skipped his lunch break. He finished the repair at 4:30 p.m. He telephoned his dispatcher and obtained authorization to claim a half hour of overtime to compensate for the missed lunch break. Accordingly, on his daily service report he showed he had worked until 5 p.m. Rykoff immediately fired him for violating its rules requiring accurate recordkeeping.

When plaintiff was questioned at deposition about his 1981 employment application, Rykoff's counsel learned of two falsifications. In his application, plaintiff had stated that he worked for General Electric from 1964 to 1974 as a major appliance field service technician, then left to go into the appliance repair business for himself. In fact, he testified, General Electric fired him for having an accident in a company service van. In his application, plaintiff had stated that he was a self-employed appliance repairer from 1974 to 1981. In fact, he testified, during five of those seven years he worked for Tappan repairing appliances, and Tappan fired him for moonlighting in a company van after a friend paid him for checking an oven after working hours.

Rykoff's motion was supported by a declaration of James Brown, the general manager of its detergent department. Brown said, "If I had known about the omissions and misrepresentations in Cooper's employment application, I would not have hired Mr. Cooper. Furthermore, if the omissions and misrepresentations on Mr. Cooper's application came to my attention while Cooper was employed by Rykoff, Mr. Cooper would have been discharged for falsifying his application."

There are no California decisions in point. Neither sound public policy nor the general law of contract dictates that an employee who can show that despite loyal and competent service he was fired without cause, in violation of a term of his employment contract—or because of his age, in violation of statute—nonetheless has forfeited all resulting legal remedies against his employer because of material misrepresentations he made years earlier in his employment application. Although resumé fraud is a serious social problem, so is termination of employment in violation of antidiscrimination laws or in breach of contract. Automatic forfeiture of all employment rights regardless of the circumstances can be too harsh a penalty in many cases. Where an employer has fired a worker in violation of a statutory ban on discrimination in the workplace, the purpose and effect of the antidiscrimination statutes are

unacceptably undermined by a principle that would allow a fact that played no part in the firing decision to bar any recovery. In the present case, we decline to adopt the *Summers* doctrine to defeat plaintiff's claims that he was fired in violation of his contractual rights and because of his age, rather than for infracting company rules.[1]

## II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is reversed. Costs to appellant.

Epstein, Acting P. J., and Vogel (C. S.), J., concurred.

A petition for a rehearing was denied May 25, 1994, and respondents' petition for review by the Supreme Court was denied August 11, 1994. Baxter, J., was of the opinion that the petition should be granted.

---

[1]The federal courts have devoted Herculean labors to the task of ascertaining the effect of resumé fraud on damages. That issue is not before us on this appeal.

*See footnote, *ante*, page 614.