80 F.3d 1425
 131 Lab.Cas. P 58,122, 11 IER Cases 1020,
96 Cal. Daily Op. Serv. 2529,
96 Daily Journal D.A.R. 4196
 Michael A. HYATT, aka, Brian Hyatt, Plaintiff-Appellant-Cross-Appellee,
United States of America, ex rel. Michael A. (Brian) Hyatt
and John W. King, Plaintiff,
v.
NORTHROP CORPORATION, Defendant-Appellee-Cross-Appellant.
 Nos. 94-55578, 94-55638.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 15, 1995.
Decided April 11, 1996.
 
 Philip J. Ganz, Jr., Laurie Susan Gorsline, Law Offices of Hardy L. Thomas, Los Angeles, California, and Linda R. MacLean and Phillip E. Benson, Law Offices of Phillip E. Benson, Newport Beach, California, for the plaintiff-appellant-cross-appellee.
 Carolyn B. Kuhl and Marc A. Becker, Munger, Tolles & Olson, Los Angeles, California, for the defendant-appellee-cross-appellant.
 Appeal from the United States District Court for the Central District of California, David V. Kenyon, District Judge, Presiding; No. CV-86-06437-KN.
 Before THOMAS G. NELSON and KLEINFELD, Circuit Judges, and WILKEN,* District Judge.
 T.G. NELSON, Circuit Judge:
 
 OVERVIEW
 
 1
 Michael A. Hyatt, a former Northrop Corporation (Northrop) employee, brought suit against Northrop. Hyatt's claims included a qui tam action for violation of the False Claims Act (FCA) (31 U.S.C. § 3729 et seq.), a private action for violation of the FCA discharged employee protection provision (31 U.S.C. § 3730(h)), and four state law causes of action, including an action for wrongful discharge in violation of public policy and intentional infliction of emotional distress. The district court dismissed Hyatt's qui tam claim with prejudice and granted summary judgment for Northrop on Hyatt's FCA discharged employee protection claim. Hyatt proceeded to trial on his state law causes of action and received a judgment against Northrop on his state wrongful discharge claim.
 
 
 2
 Hyatt timely appeals the district court's dismissal of his qui tam claim, and grant of summary judgment for Northrop on his FCA discharged employee protection claim. Northrop cross-appeals the district court's denial of its summary judgment motion seeking dismissal of Hyatt's state wrongful discharge claim. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part and remand.
 
 FACTS AND PROCEDURAL HISTORY
 A. The FCA Claim
 
 3
 Michael A. Hyatt was employed by Northrop from August 1981 until he was discharged on May 13, 1986. Hyatt filed the complaint in this case on October 3, 1986. On his own behalf, he alleged state law claims for wrongful discharge in violation of public policy and intentional infliction of emotional distress. On behalf of the Government, as a qui tam plaintiff, he asserted a cause of action against Northrop under the FCA.
 
 
 4
 After investigating the complaint, the Government informed the district court that it declined to intervene in the case to pursue the FCA claim pleaded by Hyatt. The Government also asked the court to dismiss the claim on the ground that it was barred by the "prior government knowledge" defense of the FCA, 31 U.S.C. § 3730(b)(4)(1982).
 
 
 5
 The district court dismissed Hyatt's FCA qui tam claim with prejudice, holding that the 1986 amendments to the FCA[1] did not apply retrospectively, that the Government had prior knowledge of the information underlying Hyatt's claims before his complaint was filed and that, because of the "prior government knowledge" defense, the court lacked jurisdiction over Hyatt's FCA claims.
 
 
 6
 B. The FCA Discharged Employee Protection Provision
 
 
 7
 At the time that Hyatt's original complaint was filed, the FCA did not include a discharged employee protection provision. However, the October 1986 amendments to the Act added subsection 3730(h), which provides a cause of action for employees who are retaliated against for actions taken "in furtherance of" a FCA action. 31 U.S.C. § 3730(h) (1986).
 
 
 8
 In 1987, Hyatt brought another action which added a claim under the new FCA discharged employee protection provision. The district court granted Northrop's motion for summary judgment on the FCA discharged employee protection claim, holding that § 3730(h) did not apply "to Northrop's termination of Hyatt, because Northrop's action was taken before the new law took effect."
 
 
 9
 C. After-Acquired Evidence of Resume Fraud and the Wrongful Discharge Claim
 
 
 10
 On June 15, 1981, Hyatt completed an employment application for an engineering position at Northrop. The application form requested that the applicant list "all jobs during the past ten years" and to "account for all periods of military service and unemployment." It required that the applicant certify the truth of the information provided and informed the applicant that he would be "subject to dismissal at any time" if Northrop discovered that anything on the application was untrue.
 
 
 11
 During the discovery phase of the present case, Northrop discovered that Hyatt had made false representations on his employment application regarding his employment history. Northrop moved for partial summary judgment on Hyatt's state wrongful discharge claim, arguing that Hyatt's false representations on his employment application should bar his recovery. The district court denied Northrop's motion.
 
 
 12
 The case proceeded to trial on Hyatt's state claims for wrongful discharge and intentional infliction of emotional distress. On March 15, 1994, the jury ruled in Hyatt's favor on his state wrongful discharge claim, and found for Northrop on Hyatt's claim of intentional infliction of emotional distress.
 
 
 13
 On April 14, 1994, Hyatt filed an appeal of the district court's dismissal of his FCA qui tam claim and grant of summary judgment for Northrop on his FCA discharged employee protection claim. On April 28, 1994, Northrop filed a cross-appeal of the district court's denial of its motion for partial summary judgment on Hyatt's state law claim for wrongful discharge.
 
 STANDARD OF REVIEW
 
 14
 A district court's decision on whether a statute may be applied retrospectively is a question of law to be reviewed de novo. Chenault v. United States Postal Service, 37 F.3d 535, 537 (9th Cir.1994). A district court's interpretation of state law is reviewed under the same independent de novo standard. Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).
 
 ANALYSIS
 
 15
 A. Application of the Revised Qui Tam Provisions to a Complaint Filed Prior to Enactment of the 1986 Amendments
 
 
 16
 At issue in the present case is whether two specific provisions of the 1986 amendments to the FCA, 31 U.S.C. §§ 3730(e)(4)(A) and 3730(b)(2), can be applied retrospectively to a case in which the complaint was filed, and all the conduct at issue occurred, prior to the enactment of the amendments.
 
 
 17
 In Landgraf v. USI Film Products, --- U.S. ----, ----, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994), the United States Supreme Court set out a three-step analysis to be used in determining whether "a federal statute enacted after the events in suit" should be applied retrospectively. First, the court must "determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so ... there is no need to resort to judicial default rules." Id. However, where the statute does not contain such an express command, the court must "determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id. If the statute in question would operate retroactively under this definition, the "traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." Id.
 
 
 18
 In the present case, Congress has not expressly indicated whether the 1986 amendments to the FCA apply retrospectively to complaints filed prior to the enactment of the amendments. Therefore, we must determine whether application of the 1986 amendments to the present case would have a retroactive effect. If the amendments have a retroactive effect, the amendments cannot be applied retrospectively.
 
 
 19
 Prior to the 1986 amendments, qui tam actions were barred when "the action [was] based on evidence or information the Government had when the action was brought." 31 U.S.C. § 3730(b)(4) (1982). The 1986 amendments significantly changed the qui tam provisions, such that "prior government knowledge" was no longer a defense to a qui tam action. See 31 U.S.C. § 3730(e)(4)(A) (1986).[2]
 
 
 20
 In United States ex rel. Lindenthal v. General Dynamics Corp., 61 F.3d 1402, 1408 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1319, 134 L.Ed.2d 472 (1996), we addressed the issue of whether § 3730(e)(4)(A) of the 1986 amendments should be applied retrospectively to conduct which occurred before the amendment took effect. The Government in Lindenthal had the information which formed the basis of the claim prior to the enactment of the amendment, but the complaint was not filed until October 1989, after the amendment took effect. We held that the district court properly applied the new jurisdictional provision of § 3730(e)(4)(A) retrospectively. Id.
 
 We went on to explain:
 
 21
 The new jurisdictional provision does not impair any rights [the defendant] had when it acted, nor did the provision at issue increase [the defendant's] liability for past conduct, or impose new duties. This amendment relates to whether a qui tam relator can bring the action, not to whether [the defendant] is liable for the underlying fraud.
 
 
 22
 Id. (citing United States ex rel. Anderson v. Northern Telecom, Inc., 52 F.3d 810, 814 (9th Cir.1995), cert. denied, --- U.S.----, 116 S.Ct. 700, 133 L.Ed.2d 657 (1996)).
 
 
 23
 We rejected the defendant's argument that the amendment does have a retroactive effect because it alters the defendant's rights by eliminating an "absolute defense." Id. "Proof that the government had the information when suit was brought was not an 'absolute defense' under the pre-amendment FCA. Rather, it was simply a jurisdictional defense to an action brought by a qui tam relator, as opposed to an action brought directly by the government." Id.
 
 
 24
 In United States ex rel. Schumer v. Hughes Aircraft Co., 63 F.3d 1512, 1516 (9th Cir.1995), petition for cert. filed, 64 U.S.L.W. 3593 (Feb. 15, 1996) (No. 95-1340), we again addressed the issue of whether § 3730(e)(4)(A) of the 1986 amendments should be applied retrospectively. Again, as in Lindenthal, the complaint was filed after the amendments were in effect. Id. We held that the amendment did not "infringe on the substantive rights of the defendant" and, thus, did not rebut the presumption that jurisdictional provisions will be applied retrospectively. Id. at 1517. Therefore, we applied § 3730(e)(4)(A) retrospectively. Id.
 
 
 25
 In the present case, as in Lindenthal and Schumer, the FCA claim involves actions which occurred before the 1986 amendments to the qui tam provisions were enacted. However, unlike Lindenthal and Schumer, the present case involves a complaint that was filed prior to the effective date of the 1986 amendments. Thus, the only issue to be decided by this court is whether the fact that a claim is filed before, instead of after, the 1986 amendments were enacted, distinguishes this case from Lindenthal and Schumer.
 
 
 26
 The 1986 amendments to the FCA added explicit filing and service requirements for qui tam relators. Section 3730(b)(2) (1986) provides:
 
 
 27
 A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government.... The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders.
 
 
 28
 Hyatt filed his complaint prior to the effective date of the 1986 amendments. He did not file his complaint under seal, nor did he comply with the service requirements of § 3730(b)(2) (1986). If the 1986 amendments were applied retrospectively to Hyatt's complaint, his failure to comply with the filing and service requirements of the qui tam provisions would have a retroactive effect because it would impose new duties on Hyatt with respect to a complaint already filed. See Landgraf, --- U.S. at ----, 114 S.Ct. at 1505. Thus, we hold that § 3730(b)(2) of the 1986 amendments cannot be applied retrospectively to Hyatt's complaint which was filed prior to the effective date of the amendment. See id. at ---- n. 29, 114 S.Ct. at 1502 n. 29 ("A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime....").
 
 
 29
 This conclusion does not, however, end our inquiry. We must now determine whether the fact that § 3730(b)(2) cannot be applied retrospectively to the present case bars retrospective application of § 3730(e)(4)(A).
 
 
 30
 In Landgraf, --- U.S. at ----, 114 S.Ct. at 1489, the Court addressed the issue of whether the 1991 amendments to Title VII should be applied to conduct that occurred prior to enactment of the amendments. The Court stated that "there is no special reason to think that all the diverse provisions of the Act must be treated uniformly" for purposes of determining whether it "should govern cases arising before its enactment." Id. at ----, 114 S.Ct. at 1505. The Court found the instruction from Congress that the provisions were to " 'take effect upon enactment' to mean that courts should evaluate each provision of the Act in light of ordinary judicial principles concerning the application of new rules to pending cases and pre-enactment conduct." Id. The Court then analyzed three different subsections of the amendments, implying that the result of the analysis might be different for each. Id. at ---- - ----, 114 S.Ct. at 1505-06. However, the Court held that none of the subsections could be applied retrospectively to the case before it. Id. at ----, 114 S.Ct. at 1508.
 
 
 31
 In Lindenthal, 61 F.3d at 1408 n. 6, we emphasized that our holding applied only to § 3730(e)(4)(A), and that "[t]he analysis might be different for other provisions of the 1986 amendments...." Thus, we recognized that the different provisions of the 1986 amendments to the FCA must be analyzed independently to determine whether they could be applied retrospectively, and a finding that one provision could be applied retrospectively did not bar a finding that another provision could not.
 
 
 32
 In the present case, we have determined that § 3730(b)(2) (1986) cannot be applied retrospectively to a complaint filed prior to enactment of the amendments. However, because each provision of the 1986 amendments must be analyzed independently, this determination does not bar a finding that § 3730(e)(4)(A) may be applied retrospectively. See Lindenthal, 61 F.3d at 1408 n. 6. Schumer compels our holding that § 3730(e)(4)(A) of the 1986 amendments applies retrospectively to conduct which occurred prior to the effective date of the amendments. Thus the district court erred in dismissing Hyatt's qui tam claim.
 
 
 33
 B. Retrospective Application of the FCA Discharged Employee Protection Provision
 
 
 34
 Prior to 1986, the FCA did not contain any provision for the protection of discharged employees. However, the 1986 amendments to the FCA included the addition of a discharged employee protection provision. This provision states:
 
 
 35
 Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under [the FCA] ... shall be entitled to all relief necessary to make the employee whole.
 
 
 36
 31 U.S.C. § 3730(h).
 
 
 37
 Northrop terminated Hyatt on May 13, 1986, approximately six months before the FCA discharged employee protection provisions were enacted. The FCA does not expressly prescribe the proper reach of the § 3730(h) discharged employee protection provision. Thus, we must determine whether the discharged employee protection provision should be applied retrospectively. See Landgraf, --- U.S. at ----, 114 S.Ct. at 1505.
 
 
 38
 In granting Northrop's motion for summary judgment on Hyatt's FCA discharged employee protection claim, the district court found:
 
 
 39
 [T]he Amendment created a new federal cause of action, or a new federal substantive right.... [B]efore § 3730(h) was enacted, an employee discharged for actions taken in furtherance of a whistleblower suit had no cause of action under federal law. Once § 3730(h) took effect, a new right was created-a right of an employee to bring suit in federal court based on retaliation by his employer for qui tam-related conduct. § 3730 did not merely expand the remedies available for actions that were already unlawful; instead, it defined additional conduct as unlawful (i.e., retaliatory discharge), and provided a remedy to a party aggrieved by such conduct. § 3730(h) is therefore inapplicable to Northrop's termination of Hyatt, because Northrop's action was taken before the new law took effect.
 
 
 40
 Applying the Landgraf definition of "retroactive effect" to the present case demonstrates that the district court was correct in its analysis. When Northrop made its decision to discharge Hyatt, the FCA included no discharged employee protections whatsoever; thus, even if Northrop did retaliate against Hyatt for disclosing information to the Government, at the time of Northrop's actions such conduct was technically "innocent" in the eyes of the federal law. Applying § 3730(h) retrospectively would therefore impair the right that Northrop had, under federal law, when it acted (i.e. to discharge Hyatt in retaliation); would increase Northrop's liability for past conduct (Northrop's conduct was legal at the time it acted, even if it discharged Hyatt in retaliation); and would impose new duties on Northrop with respect to actions already completed (at the time Northrop discharged Hyatt, it had no duty under federal law to not retaliate). See Landgraf, --- U.S. at ----, 114 S.Ct. at 1505. Therefore, we affirm the district court's holding that § 3730(h) should not be applied retrospectively to Northrop's termination of Hyatt.
 
 
 41
 Hyatt argues that although he may not be entitled to the purely compensatory forms of relief under § 3730(h), "his right to seek the prospective relief of reinstatement cannot be denied on retroactivity grounds...." Because Hyatt is raising his claim for reinstatement for the first time on appeal, we decline to review this issue. In re Wind Power Systems, Inc., 841 F.2d 288, 290 n. 1 (9th Cir.1988).
 
 
 42
 C. Effect of After-Acquired Evidence of Resume Fraud on an Employee's Ability to Raise a State Wrongful Discharge Claim
 
 
 43
 The after-acquired evidence doctrine is a defense asserted by an employer to shield it from liability or to limit available relief where, after an employee is unlawfully terminated, the employer learns for the first time about employee misconduct or fraud that would have led to the discharge in any event. Camp v. Jeffer, Mangels, Butler & Marmaro, 35 Cal.App.4th 620, 41 Cal.Rptr.2d 329, 335 (1995).
 
 
 44
 The California Supreme Court has not yet addressed the issue of whether after-acquired evidence will bar an employee's ability to raise a wrongful discharge claim. However, the United States Supreme Court has addressed the issue in the context of the Age Discrimination in Employment Act (ADEA), and two divisions of the California Court of Appeal have addressed the issue in the context of California state law.
 
 
 45
 In McKennon v. Nashville Banner Publishing Co., --- U.S. ----, ----, 115 S.Ct. 879, 884, 130 L.Ed.2d 852 (1995), the Court held that after-acquired evidence of employee wrongdoing which would have resulted in discharge does not bar an employee from relief for wrongful discharge under the ADEA, but does limit the remedy. The Court reasoned that the ADEA was one part of an ongoing scheme aimed at eradicating discrimination in the workplace. Id. One of the objectives of this statute is deterrence, while another objective is to compensate for injuries caused by prohibited discrimination. Id. "The private litigant who seeks redress for his or her injuries vindicates both the deterrence and the compensation objectives of the ADEA." Id. (citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 45, 94 S.Ct. 1011, 1018, 39 L.Ed.2d 147 (1974)). The Court went on to point out that if after-acquired evidence of employee wrongdoing were to bar all relief for a violation of the ADEA, the objectives of the ADEA would not be met. Id.
 
 
 46
 The objectives of the ADEA are furthered when even a single employee establishes that an employer had discriminated against him or her. The disclosure through litigation of incidents or practices which violate national policies respecting nondiscrimination in the work force is itself important....
 
 
 47
 Id. at ----, 115 S.Ct. at 885.
 
 
 48
 In Cooper v. Rykoff-Sexton, Inc., 24 Cal.App.4th 614, 29 Cal.Rptr.2d 642, 643 (1994), the California Court of Appeal for the Second District, Division 4, held that an employee's claims for age discrimination were not barred by after-acquired evidence of material omissions in the employment application. The court expressly declined "to adopt a blanket rule that material falsification of an employment application is a complete defense to a claim that the employer, while still unaware of the falsification, terminated the employment in violation of the employee's legal rights." Id., 29 Cal.Rptr.2d at 644. The court instead took a fact-specific approach.
 
 
 49
 The employee in Cooper had performed his job satisfactorily for ten years. He was then fired for allegedly violating the company's rules requiring accurate record-keeping. Id. at 645. While being questioned at a deposition about his 1981 employment application, the employer learned of two falsifications regarding the employee's experience and employment history. The employer stated that had it known of the omissions and misrepresentations, it would not have hired the employee and would have fired the employee had the omissions and misrepresentations been discovered. Id.
 
 The court stated:
 
 50
 Although resume fraud is a serious social problem, so is termination of employment in violation of anti-discrimination laws.... Automatic forfeiture of all employment rights regardless of the circumstances can be too harsh a penalty in many cases. Where an employer has fired a worker in violation of a statutory ban on discrimination in the workplace, the purpose and effect of the anti-discrimination statutes are unacceptably undermined by a principle that would allow a fact that played no part in the firing decision to bar any recovery.
 
 
 51
 Id. at 645.
 
 
 52
 In Camp, the California Court of Appeal for the Second District, Division 1, held that after-acquired evidence of employee misrepresentation was a bar to the employee's claim of wrongful discharge in violation of public policy. 41 Cal.Rptr.2d. at 340. The defendant in Camp was a contractor for an agency of the federal Government. As a condition of the contract, the defendant was required by law to periodically certify that "none of its employees had ever been convicted of a felony." Id. at 332.
 
 
 53
 Mr. and Mrs. Camp began working for the defendant in 1989 and 1990, respectively. Id. at 332. On each of their job applications, where they were asked if they had ever been convicted of a felony, they each answered "no." Id. In addition, they each submitted resumes which omitted any reference to a prior felony conviction and incarceration. Id. Mrs. Camp also signed a form that stated, under penalty of perjury, that she had not been convicted of a felony. Id.
 
 
 54
 In late 1990 and early 1991, Mrs. Camp reported that one of the partners of the defendant firm was engaged in insider trading. Id. Both Mr. and Mrs. Camp were fired in March 1991. Id. at 333. The Camps filed suit, claiming that the defendant's termination was wrongful in violation of public policy. Id. During discovery, the defendant discovered that the Camps had both been convicted of a felony.
 
 
 55
 The Camp court began its analysis by reviewing the Cooper and McKennon decisions. The court then concluded that although the alleged statutory violation in the case before it was similar to the violations in Cooper and McKennon, "the nature of the Camps' misrepresentations and their potential detrimental impact on [the defendant] distinguish this case from prior decisions." Camp, 41 Cal.Rptr.2d. at 338.
 
 
 56
 The court pointed out that Cooper and McKennon both involved employee violation of the employer's voluntarily adopted policies. In contrast, the case before it involved misrepresentation of a job qualification imposed by the federal Government. Camp, 41 Cal.Rptr.2d. at 338. "The Camps' misrepresentations about their felony convictions went to the heart of their employment relationship with [the defendant].... [The defendant] was obligated by federal law to ensure that none of its employees had ever been convicted of a felony." Id. at 339.
 
 
 57
 Finally, the Camp court looked at the equities of the case. The court acknowledged that the facts in McKennon "presented a situation where balancing the equities should permit a finding of employer liability-to reinforce the importance of antidiscrimination laws-while limiting an employee's damages-to take account of an employer's business prerogatives." Camp, 41 Cal.Rptr.2d at 339. However, the court found:
 
 
 58
 [T]he equities compel a different result where an employee who is disqualified from employment by government-imposed requirements nevertheless obtains a job by misrepresenting the pertinent qualifications. In such a situation, the employee should have no recourse for an alleged wrongful termination of employment.
 
 
 59
 Id.
 
 
 60
 The court went on to address the doctrine of "unclean hands":
 
 
 61
 Since the Camps were not lawfully qualified for their jobs, they cannot be heard to complain that they improperly lost them. Given the nature of the misrepresentations, their potential damage to [the defendants], and the fact that the Camps were disqualified from employment by means of government requirements, the public policies of the state are adequately served by barring the Camps' claims....
 
 
 62
 Id. at 340.
 
 
 63
 Based on the above cases, it appears that the California Supreme Court would make a fact-specific inquiry to determine whether Hyatt should be barred from recovering under the wrongful discharge statute. Thus, we will also use a fact-specific inquiry in addressing this issue.
 
 
 64
 Hyatt worked for Northrop for almost five years. It appears that his work performance was satisfactory until the allegations that lead to the current action were made. The misrepresentations that Hyatt made on his resume do not appear to have affected his work performance, and his misrepresentations did not cause any potential damage to Northrop.
 
 
 65
 As the Cooper court recognized, resume fraud is a serious problem. 29 Cal.Rptr.2d at 645. However, termination in violation of public policy is also a serious problem. If Northrop fired Hyatt in violation of the wrongful discharge statute, the purpose and effect of the statute would be unacceptably undermined by a rule that would allow the resume fraud, a fact that played no part in the decision to terminate, to bar any recovery.
 
 
 66
 Thus, we hold that Hyatt is not barred from asserting his state wrongful discharge claim and that, therefore, the district court did not err in denying Northrop's motion for summary judgment on this issue.[3]
 
 CONCLUSION
 
 67
 We affirm the district court's grant of summary judgment for Northrop on Hyatt's claim under the FCA discharged employee protection provision, 31 U.S.C. § 3730(h). We also affirm the district court's denial of Northrop's motion for summary judgment on Hyatt's state wrongful discharge claim. However, we reverse the district court's dismissal of Hyatt's FCA qui tam claim, and remand for further proceedings consistent with this opinion.
 
 
 68
 AFFIRMED in part, REVERSED in part and REMANDED.
 
 
 69
 Costs are awarded to appellant and cross-appellee Hyatt.
 
 
 
 *
 Honorable Claudia Wilken, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 The 1986 amendments to the FCA did not become effective until October 27, 1986, more than three weeks after Hyatt filed his original complaint
 
 
 [2]
 Title 31 U.S.C. § 3730(e)(4)(A) provides:
 No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions ... unless ... the person bringing the action is an original source of the information.
 
 
 [3]
 After the judgment was entered, Northrop filed a motion to alter or amend the judgment to limit the back-pay remedy to the time period from the date of discharge until the date Northrop discovered Hyatt's misrepresentations. The district court denied the motion on the basis that Northrop should have raised it in the motion for summary judgment or in a requested jury instruction. The district court did not abuse its discretion in rejecting Northrop's post-trial motion, since the motion was late and also, as the district court noted, it had no basis in the verdict on which to reduce Hyatt's recovery