Filed 9/22/15  Greenberg v. Broadcom Corp. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DANIEL GREENBERG, | |
| Plaintiff and Appellant, | G050557 |
| v. | (Super. Ct. No. 30-2013-00630222) |
| BROADCOM CORPORATION, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Gregory H. Lewis, Judge.  Affirmed in part and reversed in part.

Santiago & Jones, David G. Jones and Daniel S. Greenberg, in pro. per., for Plaintiff and Appellant.

Paul Hastings, James P. Carter, Brigham M. Cheney and Paul W. Cane, Jr., for Defendant and Respondent.

\*          \*          \*

The trial court granted defendant and cross-complainant Broadcom Corporation's motion for summary judgment on plaintiff and cross-defendant Daniel Greenberg's action for discriminatory practices, harassment, retaliation, and wrongful termination. The ruling was based on after-acquired evidence of plaintiff's misconduct in recording coworkers' conversations without their knowledge; it did not address the other grounds raised in the motion. The court also granted defendant's summary judgment on its cross-complaint against plaintiff for statutory penalties due to violations of the Invasion of Privacy Act (Pen. Code, § 630 et seq.; all further undesignated statutory references are to this code).

Plaintiff contends summary judgment on his complaint should not have been granted because the after-acquired evidence doctrine does not constitute a complete defense to his claims under California's Fair Employment and Housing Act (FEHA; Gov. Code, §12900 et seq.). Despite plaintiff's failure to address this issue in his opposition to defendant's summary judgment motion, we shall not deem the issue waived and will address it on the merits. Having done so in light of the California Supreme Court's recent decision in *Salas v. Sierra Chemical Co*. (2014) 59 Cal.4th 407, 429-430 (*Salas*), holding that after-acquired evidence of wrongdoing is not a complete defense to claims under the FEHA, we reverse the judgment as it relates to the complaint.

On defendant's cross-complaint, plaintiff argues the court erroneously granted summary judgment because a triable issue of material fact exists in whether the recorded conversations are confidential. We disagree and affirm the judgment with respect to the cross-complaint.


FACTS AND PROCEDURAL BACKGROUND


The following facts are undisputed: Defendant hired plaintiff as a Business Systems Analyst in 2010. In February 2012, plaintiff sent an e-mail, after which he

2

began complaining about "unethical and unprofessional business practices" and "being bullied and discriminated against because [he] sent that email."

In May, plaintiff was reassigned to another supervisor. Two days later, he disclosed he had epilepsy.

After a training session held in September, the outside contractor hired to conduct it reported to defendant that plaintiff had questioned the ethics of the executive vice president of human resources. Plaintiff denied making that statement and accused defendant's human resources department of being unethical. Defendant thereafter terminated plaintiff.

Plaintiff sued defendant. The first amended (operative) complaint alleged causes of action for violations of FEHA (discrimination, and failures to accommodate disability, engage in the interactive process, and take all reasonable steps to prevent discrimination and retaliation), unlawful harassment, retaliation, wrongful termination in violation of public policy, intentional infliction of emotional distress, and negligent misrepresentation.

During discovery, plaintiff revealed he had made 29 electronic recordings of conversations from June 6 to September 19 between himself and different coworkers, both individually and in a group setting. Defendant also recorded the September training session at which the outside contractor, plaintiff, and eight coworkers were present. Each recording was made on defendant's property and "concerned his work . . . either in the form of: (1) a discussion of his job duties and responsibility as [defendant's] employee and Business Systems Analyst; or (2) a discussion with [defendant's] Human Resources personnel regarding treatment by and interaction with his supervisors and/or coworkers." Plaintiff claimed he made the recordings in order "to allow him to remember what happened during conversations at [his] work place" because his epilepsy caused seizures which affected his memory.

3

Defendant filed a cross-complaint against plaintiff, alleging entitlement to statutory damages under section 637.2 due to plaintiff's conduct in recording the conversations. Defendant thereafter moved for summary judgment or alternative summary adjudication of issues on the complaint and summary judgment on its cross-complaint.

As to the complaint, defendant argued, in part, it was entitled to judgment based on its affirmative defense of after-acquired evidence of plaintiff's misconduct during his employment for which defendant would have terminated him without regard to any other reason. Plaintiff, although represented by counsel at the time, did not address this defense in opposition to the motion.

Defendant's motion for summary judgment on its cross-complaint contended plaintiff had violated section 632, entitling defendant to damages under 637.2. Plaintiff opposed this motion by contending triable issues of fact existed regarding "whether the conversation participants had an objective expectation of privacy."

In granting defendant's motions, the court agreed defendant was entitled to judgment on the complaint based on the after-acquired evidence doctrine. As to the cross-complaint, the court determined defendant had carried its burden by showing plaintiff intentionally, and without consent, recorded conversations that the parties intended to be confined to the participants. In turn, plaintiff's evidence was too speculative to raise a triable issue of material fact. The court awarded $5,000 for each of the 29 conversations recorded, totaling $145,000.

The California Supreme Court issued its opinion in *Salas*, *supra*, 59 Cal.4th 407 ten days after the court rendered its decision. Judgment was entered two months later. Plaintiff's counsel remained counsel of record until at least three weeks after judgment was entered, when his motion to be relieved as counsel was set to be heard.

4

DISCUSSION

*1. Standard of Review*

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "'"We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."'" [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

"A defendant moving for summary judgment bears the initial burden to show the plaintiff's action has no merit. [Citation.] The defendant can meet that burden by either showing the plaintiff cannot establish one or more elements of his or her cause of action or there is a complete defense to the claim. [Citations.] To meet this burden, the defendant must present evidence sufficient to show he or she is entitled to judgment as a matter of law." (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 889 (*Carlsen*); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted. (*Aguilar*).)

"Once the defendant meets that burden, the burden shifts to the plaintiff to present evidence establishing a triable issue exists on one or more material facts. [Citations.] 'In deciding whether a plaintiff has met h[is] burden of proof, we consider both direct and circumstantial evidence, and all reasonable inferences to be drawn from both kinds of evidence, giving full consideration to the negative and affirmative inferences to be drawn from all of the evidence, including that which has been produced by the defendant.' [Citation.] 'An issue of fact can only be created by a conflict of evidence. It is not created by "speculation, conjecture, imagination or guess work." [Citation.] Further, an issue of fact is not raised by "cryptic, broadly phrased, and

5

conclusory assertions" [citation], or mere possibilities [citation]. "Thus, while the court in determining a motion for summary judgment does not 'try' the case, the court is bound to consider the competency of the evidence presented." [Citation.]' [Citation.] Responsive evidence that 'gives rise to no more than mere speculation' is not sufficient to establish a triable issue of material fact." (*Carlsen*, *supra*, 227 Cal.App.4th at pp. 889-890.)

"There is a triable issue of material fact if, and only if, the evidence [produced] would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, at p. 850, fn. omitted.) "'[A]ssessing the sufficiency of the evidence to determine whether a reasonable juror could find that the plaintiff has satisfied his burden of persuasion is a traditional judicial function.'" (*Id*. at p. 856, fn. 26.)

*2. Summary Judgment on the Complaint*

"The doctrine of after-acquired evidence refers to an employer's discovery, *after* an allegedly wrongful termination of employment or refusal to hire, of information that would have justified a lawful termination or refusal to hire." (*Salas*, *supra*, 59 Cal.4th at p. 428.) "Employee wrongdoing in after-acquired-evidence cases generally falls into one of two categories: (1) misrepresentations on a resume or job application; or (2) posthire, on-the-job misconduct." (*Camp v. Jeffer, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 632.)

Plaintiff contends the court erred in granting summary judgment on the complaint based on the after-acquired evidence doctrine because the doctrine does not constitute a complete defense. But although *Salas*, *supra*, 59 Cal.4th 407 was not decided until 10 days after the trial court had issued its order granting summary judgment, plaintiff's opening brief relies on cases that had long existed before he filed his opposition to defendant's summary judgment motion. In particular, plaintiff analogizes

6

this case to *Cooper v. Rykoff-Sexton, Inc.* (1994) 24 Cal.App.4th 614, involving resume misrepresentation, which "decline[d] to adopt a blanket rule that material falsification of an employment application is a complete defense to a claim that the employer, while still unaware of the falsification, terminated the employment in violation of the employee's legal rights." (*Id.* at p. 617.) According to *Cooper*: "Neither sound public policy nor the general law of contract dictates that an employee who can show that despite loyal and competent service he was fired without cause, in violation of a term of his employment contract—or because of his age, in violation of statute—nonetheless has forfeited all resulting legal remedies against his employer because of material misrepresentations he made years earlier in his employment application. Although resumé fraud is a serious social problem, so is termination of employment in violation of antidiscrimination laws or in breach of contract. Automatic forfeiture of all employment rights regardless of the circumstances can be too harsh a penalty in many cases. Where an employer has fired a worker in violation of a statutory ban on discrimination in the workplace, the purpose and effect of the antidiscrimination statutes are unacceptably undermined by a principle that would allow a fact that played no part in the firing decision to bar any recovery." (*Id.* at pp. 618-619.)

Subsequent California appellate opinions are to the same effect, as well as a United States Supreme Court case involving the federal Age Discrimination in Employment Act of 1967 (ADEA; 29 U.S.C. § 621 et seq.). (See *McKennon v. Nashville Banner Pub. Co.* (1995) 513 U.S. 352, 361-363 [115 S.Ct. 879, 130 L.Ed.2d 852] [summary judgment for employer improperly granted despite after-acquired evidence employee took home copies of confidential materials because the after-acquired evidence rule does not bar all relief under ADEA, as that would undermine its goal of eliminating workplace discrimination, and must be applied on a case-by-case basis in light of facts and equitable considerations] (*McKennon*); *Thompson v. Tracor Flight Systems, Inc.* (2001) 86 Cal.App.4th 1156, 1174 ["court did not err in failing to bar recovery or

7

equitably reduce the award of damages pursuant to the after-acquired evidence doctrine" where "[a]t the very least, substantial evidence permitted a reasonable jury to find that respondent's motivation in taking [home copies of company documents] constituted poor judgment and not theft, and would have subjected her to, at most, lesser measures of 'progressive discipline' instead of termination"]; *Murillo v. Rite Stuff Foods, Inc*. (1998) 65 Cal.App.4th 833, 846, 847 [summary judgment for employer reversed despite employee's false documentation of U.S. residency where it could be inferred employer "tacitly condoned the hiring of undocumented aliens as long as they presented false documentation" and "there is no sound reason why either the after-acquired-evidence doctrine or the unclean hands doctrine should bar plaintiff's discrimination or tort claims" where they arose "from acts occurring during her employment" as opposed to her discharge]; but see *Camp v. Jeffer, Mangels, Butler & Marmaro*, *supra*, 35 Cal.App.4th at pp. 636, 638 [in affirming summary judgment for the employer, court distinguished an employer's internal, self-imposed job requirements from those imposed by the federal government and concluded "the equities" required application of the after-acquired evidence doctrine where the plaintiffs' failure to disclose their prior felony convictions "went to the heart of their employment relationship with [the defendant]" and placed the defendant "not only in jeopardy of losing its contract with [a government agency] but also of being accused of" falsely certifying to the federal government that all employees met the government agency's standards].)

This body of law had long been in existence when plaintiff's then counsel filed the opposition to defendant's summary judgment on the complaint. Yet no argument was made in opposition to the after-acquired evidence defense raised in defendant's moving papers. Even after our Supreme Court issued its decision in *Salas*, *supra*, 59 Cal.4th 407, plaintiff's counsel did not bring the issue to the trial court's attention by way of a posttrial motion or otherwise. Rather, *Salas* and the contention that

the after-acquired evidence doctrine is not a complete defense to plaintiff's claims was not raised until plaintiff's opening brief.

During oral argument, plaintiff's newly-retained appellate counsel argued it would be unfair to require a party appearing in pro. per. to raise issues set forth in a case not yet decided. But at the time *Salas*, *supra*, 59 Cal.4th 407 was decided, plaintiff was still represented by trial counsel. And, well before then, several courts had already weighed in on the issue of whether after-acquired evidence constitutes a complete defense to claims of employment discrimination and wrongful termination.

Generally, we would decline to consider an argument raised for the first time on appeal. (*Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 335.) But we may consider the issue because "'[it] involves purely a legal question which rests on an uncontroverted record which could not have been altered by the presentation of additional evidence.'" (*Ibid.*) We shall do so in light of *Salas*, *supra*, 59 Cal.4th 407.

In *Salas*, *supra*, 59 Cal.4th 407, the California Supreme Court, relying on the principles set forth in *McKennon*, *supra*, 513 U.S. at pages 358-363, held, "Achievement of [the] antidiscrimination goal [identified in the FEHA] would be substantially impaired if the doctrine of after-acquired evidence were a complete defense to claims of retaliation and disability discrimination brought under the FEHA. By definition, after-acquired evidence is not known to the employer at the time of the allegedly unlawful termination or refusal to hire. [Citation.] In after-acquired evidence cases, the employer's alleged wrongful act in violation of the FEHA's strong public policy precedes the employer's discovery of information that would have justified the employer's decision. To allow such after-acquired evidence to be a complete defense would eviscerate the public policies embodied in the FEHA by allowing an employer to engage in invidious employment discrimination with total impunity.

"It does not follow, however, that the doctrine of after-acquired evidence has no bearing on employment discrimination and retaliation claims brought under

California's FEHA. . . . In after-acquired evidence cases, . . . both the employee's rights and the employer's prerogatives deserve recognition. The relative equities will vary from case to case, depending on the nature and consequences of any wrongdoing on either side, a circumstance that counsels against rigidity in fashioning appropriate remedies in those actions where an employer relies on after-acquired evidence to defeat an employee's FEHA claims.

"Generally, the employee's remedies should not afford compensation for loss of employment during the period after the employer's discovery of the evidence relating to the employee's wrongdoing. When the employer shows that information acquired *after* the employee's claim has been made would have led to a lawful discharge or other employment action, remedies such as reinstatement, promotion, and pay for periods after the employer learned of such information would be 'inequitable and pointless,' as they grant remedial relief for a period during which the plaintiff employee was no longer in the defendant's employment and had no right to such employment. [Citation.]

"The remedial relief generally should compensate the employee for loss of employment from the date of wrongful discharge or refusal to hire to the date on which the employer acquired information of the employee's wrongdoing or ineligibility for employment. Fashioning remedies based on the relative equities of the parties prevents the employer from violating California's FEHA with impunity while also preventing an employee or job applicant from obtaining lost wages compensation for a period during which the employee or applicant would not in any event have been employed by the employer. In an appropriate case, it would also prevent an employee from recovering any lost wages when the employee's wrongdoing is particularly egregious." (*Salas*, *supra*, 59 Cal.4th at pp. 430-431, fn. omitted.)

In light of the holding in *Salas*, *supra*, 59 Cal.4th 407, the trial court erred in granting summary judgment based on its conclusion the after-acquired evidence

doctrine constituted a complete defense to plaintiff's claims.  The judgment as to the complaint is reversed.  The matter is remanded for the trial court to consider whether the remaining ground raised in defendant's motion entitle it to summary judgment and, if not, for further proceedings, keeping in mind the equitable principles set forth in *Salas* with regard to the after-acquired evidence rule.

*3.  Summary Judgment/Adjudication on the Cross-Complaint*

Defendant's cross-complaint sought, among other things, statutory penalties under section 637.2 of $5,000 per violation of section 632 or three times its actual damages, whichever is greater.  Section 632, subdivision (a) makes it illegal to "intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrop[] upon or record[] the confidential communication, whether the communication is carried on among the parties in the presence of one another . . . ."  Subdivision (c) defines a "'confidential communication'" as including "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made . . . in any . . . circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."

"The test of confidentiality is objective.  [The recording party's] subjective intent is irrelevant.  [Citation.]  'A communication must be protected if *either* party reasonably expects the communication to be confined to the parties.'  [Citation.]  It is sufficient [if the persons] who were secretly recorded expected the conversations to be private."  (*Coulter v. Bank of America* (1994) 28 Cal.App.4th 923, 929 (*Coulter*).)

Plaintiff contends triable issues of material fact exist as to whether the recorded communications were made under circumstances in which the parties may reasonably expect they were not being overheard or recorded.  We disagree.

11

The facts of *Coulter*, *supra*, 28 Cal.App.4th 923 are virtually identical to those in this case. During his employment, Coulter "began to experience largely unexplained problems with various supervisors and coworkers at the bank in 1989. In apparent anticipation of litigation he would later file, claiming sexual harassment and lack of adequate grievance review procedures, Coulter began secretly tape-recording face-to-face and telephone conversations with various bank employees, supervisors and officers." (*Id.* at p. 925.) After Coulter filed his complaint, he turned over numerous tapes "containing 160 secretly recorded conversations with bank employees." (*Ibid.*) The bank and 11 employees cross-complained for violation of the Privacy Act, among other things, and moved for summary adjudication. The 11 employees "submitted affidavits stating the conversations were in private, they intended them to be confidential, and they did not consent to their being recorded." (*Id.* at p. 926.) The affidavits detailed "the circumstances surrounding the conversations, the topics discussed and their own belief and expectation that the conversations were confidential." (*Id.* at p. 929.) The trial court granted the motion and this court affirmed. (*Id.* at pp. 925, 927-928, 930.)

Here, each of the other parties to the conversations recorded by plaintiff filed similar declarations. These affidavits stated the recorded conversations were made either in an office or a conference room on defendant's property. All but one of the recordings involved defendant's job performance, duties, and responsibilities or those of his coworkers, his work relationships with supervisors and coworkers, or the ongoing investigation into his complaints. Each of the other parties to these recordings attested they were speaking with plaintiff in their various capacities in defendant's human resources, investigations or management departments when they were recorded.

The remaining recording was of the private training session conducted by the outside contractor in one of defendant's offices. The training session was entitled, "The Courage to Speak Up: Voicing Employee Concerns" and "involved ethics and reporting suspected ethical violations." As to that recording, defendant's "HR Project

12

Manager" declared that the outside contractor and most of defendant's other "employees in attendance spoke." She expected the conversations engaged in during the training session "to be private and did not expect the training session to be recorded. [She] knew that [her d]epartment expected the training session and what was discussed . . . to be private." Additionally, she herself spoke during the training "in the course of fulfilling [her] duties."

All of the declarants attested that they expected the conversations to be private, did not anticipate they would be recorded, and did not know they had been recorded until several months after plaintiff's employment had been terminated. Plaintiff did not contest these facts.

The evidence produced by defendant satisfied its initial burden as the cross-complainant to make prima facie showing the absence of any triable issues of material fact. (See *Thrifty Oil Co. v. Superior Court* (2001) 91 Cal.App.4th 1070, 1077 [evidence is sufficient to shift the burden of proof to the opposing party if "standing alone, uncontroverted, and without submission of any issue to a trier of fact, [such evidence] would compel a . . . verdict" in the moving party's favor at trial].) The burden thus shifted to plaintiff to demonstrate otherwise. (Code Civ. Proc., § 437c, subd. (p)(1); *Aguilar*, *supra*, 25 Cal.4th at pp. 850-851.)

In *Coulter*, the plaintiff maintained a material issue of fact existed as to whether the conversations were confidential because he never intended them to be so and "expected that the subject matter of the conversations would be repeated to other bank employees." (*Coulter*, *supra*, 28 Cal.App.4th at p. 929.) Plaintiff here makes a similar argument, namely that, he "did not have a reasonable expectation of privacy" but rather "had the objective expectation that co-workers in other offices" and the break room could overhear him. We reject this argument. First, his "expectation" was *subjective*, not objective. Second, as stated in *Coulter*: plaintiff's "subjective intent is irrelevant. [Citation.] 'A communication must be protected if *either* party reasonably expects the

13

communication to be confined to the parties.' [Citation.] It is sufficient that the . . . employees who were secretly recorded expected the conversations to be private." (*Ibid.*)

As *Coulter* explained, "'[U]nder section 632 "confidentiality" appears to require nothing more than the existence of a reasonable expectation by one of the parties that no one is "listening in" or overhearing the conversation.' [Citation.] There was no material issue regarding confidentiality. Each of the employees involved submitted a declaration stating he or she believed the conversations to be private, most were held in private offices with no one else present, and they believed no one else was listening in on their conversations. Coulter provided no evidence to the contrary. He admitted the circumstances of each conversation. No evidence suggests the employees whose conversations he recorded did not have a reasonable expectation the conversations were confidential." (*Coulter*, *supra*, 28 Cal.App.4th at pp. 929-930.)

In his opposition, plaintiff acknowledged this "makes sense, as in any case, if there is no evidence to the contrary, then there is obviously no triable issue of material fact." He argued that unlike *Coulter*, *supra*, 28 Cal.App.4th at pages 929-930, however, he presented evidence of "numerous facts to indicate that the participants to the conversations had no reasonable expectation of privacy."

In his affidavit in support of his opposition to the summary judgment motion on the cross-complaint, plaintiff declared: the doors to the offices and conference room where the conversations took place were open; the offices were "no more than 4-5 feet from the closest neighboring office" and "opene[d] to a hallway with approximately 5 other open office doors within an 8-10 foot radius"; "the conference room is in a high traffic area and within hearing distance of the break room"; "muffled third party conversations" and telephones ringing could be heard in the background in his recordings; "[o]n several occasions, people walked in and out of the conference room and could easily overhear the non-private conversations."

14

Plaintiff fails to provide any context for the "people walk[ing] in and out of the conference room," including whether they did so during one of the recorded conversations and if so, whether the conversations continued with them present. Additionally, "[a] business office need not be sealed to offer its occupant a reasonable degree of privacy." (*United States v. McIntyre* (9th Cir. 1978) 582 F.2d 1221, 1224, quoted with approval in *Sanders v. American Broadcasting Companies* (1999) 20 Cal.4th 907, 918-919 (*Sanders*).) And the fact the third party conversations heard in the recordings were "muffled" indicates their contents could not be perceived notwithstanding the open doors, the nearness of the offices to each other, the proximity of the break room to the conference room, and the conference room being in "a high traffic area." If the third party conversations could not be discerned under these facts, it is not logically inferable based on those same facts that the recorded parties could have reasonably expected their conversations to be overheard or recorded. "'An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action.' [Citation.] An inference must be reasonable to raise a triable issue of material fact on summary judgment." [Citation.] While we may not weigh [plaintiff's] evidence or inferences against [defendant's] evidence as though we are sitting as a trier of fact, we 'must nevertheless determine what any evidence or inference *could show or imply to a reasonable trier of fact . . . .* In doing so, [we do] not decide on any finding of [our] own, but simply decide[] what finding such a trier of fact could make for itself.'" (*Carlsen*, *supra*, 227 Cal.App.4th at pp. 891-892 [evidence that the defendant "may have possessed the motive, opportunity, and means to push [plaintiff] off the cliff" "is not enough" but "merely allows speculation," which "is not evidence"].)

Plaintiff also attested that the training session was "open to any employee who signed up for it," attended by "at least 10 other employees," and "conducted in a class like, open forum format, and participants were able to ask questions and receive

15

answers from the trainer." He argued these facts showed there could be no "expectation that co-workers would keep whatever was discussed during the training to be private."

But everyone who attended the training session was a "party" to the conversations therein. "A 'party' to something may be a person who participates in it, or it may be a person who is simply concerned with it. [Citation.] 'Overhear' connotes listening without a speaker's knowledge or intent that his speech be heard, as in eavesdropping, which is 'to listen secretly to what is said in private.' [Citation.] It follows that one who listens with the speaker's knowledge and intent is involved or interested in a conversation, not an eavesdropper." (*Lieberman v. KCOP Television, Inc.* (2003) 110 Cal.App.4th 156, 168.)

The fact no one in the training session was an eavesdropper does not mean plaintiff did not violate section 632 by using an "amplifying or recording device [to] record[] the confidential communication." (§ 632, subd. (a).) Nor does it suggest the persons recorded reasonably expected their conversations during the training session would be overheard or recorded. (§ 632, subd. (c).) Defendant's human resources project manager declared otherwise and plaintiff presented no contrary evidence in response.

Moreover, whether or not coworkers would later discuss matters from the training "has no bearing on whether section 632 has been violated. 'While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or a mechanical device.' [Citation.] '[U]nder section 632, "confidentiality" appears to require nothing more than the existence of a reasonable expectation by one of the parties that no one is "listening in" or overhearing the conversation.'" (*Coulter*, *supra*, 28 Cal.App.4th at p. 929.) Thus, "the fact that [a person] knows or should know the information will be shared with coemployees or other

16

parties does not change the confidential character of a communication for purposes of section 632." (*Kight v. CashCall, Inc.* (2011) 200 Cal.App.4th 1377, 1397, citing *Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 775-776.)

A triable issue of material fact is created only if there is enough of a showing that a jury could reasonably find for the opposing party. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) The evidence presented by plaintiff does not rise to this level. Rather, as the trial court found, plaintiff's "evidence suggesting it was *possible* the communications might be overheard by those in nearby offices or passersby because the doors were open or people walked by is too speculative to raise a triable issue of fact as to whether the parties to the conversations could reasonably expect to be overheard." Plaintiff concedes the other parties to the conversations expressly declared they expected the conversations to be confidential and not recorded. His claim that they did not have that desire lacks merit given the undisputed nature of the declarations and the speculative nature of his evidence. Thus, although generally "[i]t is for the jury to decide whether under the circumstance presented [a party to a conversation] could have *reasonably* expected that the communications were private" (*Lieberman v. KCOP Television, Inc.*, *supra*, 110 Cal.App.4th at p. 169), it may be resolved as an issue of law on summary judgment when the material facts are undisputed. (*Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 939-940.)

The cases on which plaintiff relies do no persuade us otherwise. *Sanders*, *supra*, 20 Cal.4th at page 911 concluded: "In an office or other workplace to which the general public does not have unfettered access, employees may enjoy a limited, but legitimate, expectation that their conversations and other interactions will not be secretly videotaped . . . even though those conversations may not have been completely private from the participants' coworkers." Plaintiff, however, asserts such expectation of privacy is also "limited, especially in this instance, where the person doing the recording is not a stranger to the workplace." But *Sanders* does not support his claim. At the page

17

referenced by plaintiff, *Sanders* was discussing an employee's "reasonable expectation of privacy against the *employer's* filming of events at another employee's desk" or shared workspaces. (*Id*. at p. 920.) Nothing in *Sanders* purports to limit employees' privacy expectations against a *coworker*'s covert recordings of conversations with other coworkers.

We do not disagree with the statement in *Walker v. Darby* (11th Cir. 1990) 911 F.2d 1573 distinguishing "between a public employee having a reasonable expectation of privacy in personal conversations taking place in the workplace and having a reasonable expectation that those conversations will not be intercepted by a device which allows them to be overheard inside an office in another area of the building." (*Id*. at p. 1579.) Also, plaintiff is correct the court there found a triable issue of fact remained as to whether the plaintiff "had a subjective expectation that conversations taking place near his [workstation located in a shared space] were free from interception." (*Ibid*.) But that question, involving one of the elements required to prove a violation of the federal anti-wiretapping law, is different from whether parties to communications in private offices and conference rooms may reasonably expect those communications to be overheard or recorded within the meaning of section 632, subdivision (c). And although the plaintiff in *Walker* was able to create a triable issue of material fact so as to preserve his claim for trial by declaring he never gave permission to be intercepted or monitored, plaintiff here offered only speculation and conjecture in the face of affidavits attesting to the declarants' expectations their conversations were private and not being recorded.

Finally, plaintiff cites *Kemp v. Block* (D. Nev. 1985) 607 F.Supp. 1262 for the proposition that "one who argues loudly in a small undivided workplace cannot reasonably expect privacy." But plaintiff present no evidence that anyone spoke loudly, much less argued, or that they did so in a shop of a "relatively small size" with no "interior walls." (*Id.* at p. 1264.)

18

## DISPOSITION

The judgment is reversed with respect to plaintiff's complaint against defendant and the matter is remanded for further proceedings. The judgment is affirmed insofar as it relates to the granting of defendant's cross-complaint against plaintiff. The parties shall bear their own costs.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

MOORE, J.

19