141 F.3d 1173
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gordon BERGELSON, an individual, Plaintiff-Appellant,
v.
LAIDLAW TRANSIT, INC., a corporation, Defendant-Appellee,
and
Howard Wallack, Defendant.
 No. 96-56684.
D.C. No. CV-96-01926-R.
 United States Court of Appeals,
Ninth Circuit.
 .
Argued and Submitted March 5, 1998.
Decided March 23, 1998.
 
 Appeal from the United States District Court for the Central District of California Manuel L. Real, Chief District Judge, Presiding.
 Before BRUNETTI, THOMPSON, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 A. Exhaustion of Administrative Remedies on Harassment Claims
 
 
 3
 Bergelson checked the box next to "laid off" on the Department of Fair Employment and Housing ("DFEH") charge, and included age and religion as the reasons he thought he was laid off. The facts underlying his claim that he was discharged because of his age and religion are the same as the facts underlying his claim that he was harassed because of his age and religion. An investigation into Bergelson's claim of discriminatory discharge would have encompassed the conduct that Bergelson complains of in his religious and age-based harassment claims. Therefore, Bergelson's harassment claim is not barred by his failure to check the "harassment" box on the DFEH charge. See Sandhu v. Lockheed Missiles & Space Co., 26 Cal.App.4th 846, 31 Cal.Rptr.2d 617, 625 (Cal.Ct.App.1994).
 
 
 4
 B. Religious Discrimination Claim and Motion to Amend Complaint
 
 
 5
 On the same day that Laidlaw filed its motion for summary judgment, Bergelson filed a motion for an order permitting him to include discriminatory discharge claims based on religion in the pretrial conference order or, alternatively, permitting him to file an amended complaint. The district court granted Laidlaw's motion for summary judgment without first determining the merits of Bergelson's motion, then, a few days later, denied Bergelson's motion as "moot." As the district court stated, the summary judgment motion was granted, in part, because the religious discrimination claims were not contained in his civil complaint.[1] The motion filed by Bergelson, if granted, would have remedied the defect on which the summary judgment motion was granted--it would have either amended the complaint to add a religious discrimination claim or would have added such a claim to the pretrial order. It was error for the district court to grant Laidlaw's motion for summary judgment without first determining the merits of Bergelson's pending motion to amend. See Garrett v. City & County of San Francisco, 818 F.2d 1515, 1519 (9th Cir.1987) (holding that the trial court erred in granting defendant's motion for summary judgment without first addressing the merits of the plaintiff's pending discovery motion).[2]
 
 C. Age Discrimination
 
 6
 The district court granted summary judgment on Bergelson's age discrimination case because it found: (1) that Bergelson failed to establish a prima facie case in that he failed to show that he was qualified to perform the job duties of both bus sales and maintenance; and (2) that Bergelson failed to present evidence to show that the reason articulated by Laidlaw for the termination--economic restructuring/downsizing--was pretextual. In doing so, the district court erred.
 
 1. Prima Facie Case
 
 7
 Because a new employee was not hired to replace Bergelson, but rather current employees assumed Bergelson's duties in addition to their own, the circumstances surrounding Bergelson's termination are analogous to a reduction in work force situation. Bergelson was not, therefore, required to show replacement by a younger person that was less qualified; instead, he could meet his burden by showing, "through circumstantial, statistical or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination." See Wallis v. J.R. Simplot Co., 26 F.3d 885, 891 (9th Cir.1994). Bergelson met his burden by showing that Laidlaw "had a continuing need for his skills and services in that his various duties [of selling used buses] were still being performed." Id.
 
 
 8
 Moreover, the district court failed to recognize that Bergelson was not required to proceed by way of the McDonnell Douglas presumption at all. Instead, he could establish a prima facie case of age discrimination by offering direct evidence of Laidlaw's discriminatory motives. See Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1409-10 (9th Cir.1996). Bergelson clearly met his burden in this respect by offering evidence including the following: (1) that the president of Laidlaw, Grainger, circulated an agenda which targeted fifty-five as the age for retirement, and stated at a meeting of senior vice presidents that the business was a "young man's game," that they should think of retiring before age fifty-five, and that the pressures of the job were for a "young man, not for an older man"; (2) that Grainger went out of his way to challenge Wallack's praise of Bergelson's performance, determined that Bergelson was "overpaid" despite evidence offered to the contrary, precluded salary increases for Bergelson, downgraded Bergelson's position, and ultimately decided to terminate Bergelson by eliminating his position; (3) Dave Daley, vice president of the southwest region, told Bergelson that he was "over the hill"; (4) Daley told Walsh, a fifty-year-old employee who was laid off then rehired after retaining a lawyer and bringing an age discrimination charge, "We need to get rid of some of these old duffers around here"; (5) Ridsdill told Bergelson that "at your age, and with your health problems, you are lucky to have a job," and that Laidlaw had a lot of "tired iron"; and (6) over a two-year period, beginning in 1994, Laidlaw engaged in a pattern of practice of replacing older employees with younger employees.
 
 
 9
 The evidence presented by Bergelson to establish a prima facie case of age discrimination far surpasses the "minimal" amount required to defeat a summary judgment motion. See Wallis, 26 F.3d at 889. See also Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1111 (9th Cir., 1991) ("[T]he amount [of evidence] that must be produced in order to create a prima facie case is 'very little.' ")
 
 
 10
 2. Evidence that Laidlaw's Purported Reason for Termination was Pretextual
 
 
 11
 Once Bergelson met his burden of establishing a prima facie case of age discrimination, the burden shifted to Laidlaw to articulate a legitimate nondiscriminatory reason for its employment decision. See Wallis, 26 F.3d at 889. The reason given by Laidlaw for terminating Bergelson's employment was economic restructuring/downsizing of the company. This is a legitimate nondiscriminatory reason. The burden therefore shifted to Bergelson to demonstrate that Laidlaw's alleged reason for terminating him is a pretext for another motive which is discriminatory. See id.
 
 
 12
 To meet his burden of showing pretext, Bergelson points to the evidence he presented to establish his prima facie case, particularly (1) evidence that Grainger told Wallack to write a memorandum after-the-fact to make the decision to terminate Bergelson look like an economic one; (2) evidence that the decision was made to eliminate his position as director of bus sales for the western region after the decision to terminate him had been made; and (3) Wallack's testimony that Bergelson's discharge made no economic sense in that Bergelson was making a profit for the company at a time when the other regions were experiencing losses. The evidence presented by Bergelson is sufficient to raise a factual question with respect to whether Laidlaw's articulated reason for terminating him was pretextual. See Wallis, 26 F.3d at 890 (holding that the same evidence that the plaintiff introduced to establish a prima facie case can be used to show that the employer's articulated reason is pretextual); Sischo-Nownejad, 934 F.2d at 1111 (same). See also Schnidrig, 80 F.3d at 1410 (recognizing that, in employment discrimination cases, the standard for summary judgment is very high and that to survive summary judgment, very little evidence is required).
 
 D. Implied Employment Contract
 
 13
 Bergelson offered the following evidence in support of his claim that an implied employment contract existed: (1) his ten-year term of employment; (2) his receipt of "superior performance ratings"; (3) statements by Bergelson's original supervisor, Webster, including: "that he envisioned Bergelson could be part of Laidlaw's future;" that "[o]nce you're here, you're here forever"; that "we're always going to need somebody to sell buses"; and that if Bergelson accepted the job offer from Laidlaw, "he would have a secure future with the company"; (4) Bergelson's subjective belief that he "understood Webster's words to mean that as long as he did a good job, he would be treated fairly, and not subjected to any adverse employment decision without good cause"; (5) assurances by a senior Laidlaw executive that "once you're with this company, you're here forever"; (6) assurances by Wallack, his supervisor at the time of his termination, that Laidlaw would always need him to sell the excess fleet; (7) Wallack's testimony that Laidlaw had a long-standing policy of creating an environment where long-term employees could feel secure in their jobs, and of communicating to the employees that they were valuable assets because of their experience; and that Wallack had told Bergelson that he was a valuable asset; (8) Laidlaw's written policy and practice that termination was not to be "arbitrary or for unlawful or immoral purposes"; and (9) Laidlaw's written policy and practice that prior to terminating long-term employees, the company "normally" used "progressive discipline" procedures. This evidence is sufficient to raise an issue of fact under California law as to whether Bergelson was terminable only for cause.
 
 
 14
 Laidlaw's reliance on Camp v. Jeffer, Mangels, Butler & Marmaro, 35 Cal.App.4th 620, 41 Cal.Rptr.2d 329 (Cal.Ct.App.1995), and Shapiro v. Wells Fargo Realty Advisors, 152 Cal.App.3d 467, 199 Cal.Rptr. 613 (Cal.Ct.App.1984), in support of its argument that none of the evidence presented by Bergelson is sufficient to overcome its written policy that all employees are terminable at will, is misplaced. In both Camp and Shapiro, there was an express written contract that the employment was terminable at will and the employees had either signed the contract that expressly stated that the employment was at will and that the employee did not have any right to continued employment, see Shapiro, 199 Cal.Rptr. at 616, or had signed an acknowledgment on which the employee agreed that the employment was at will, see Camp, 41 Cal.Rptr.2d at 334. In contrast, Laidlaw relies on a statement in its policy manual that it "reserve[s] the right to terminate employees whenever management deems it necessary or appropriate to do so." This statement is not equivalent to the express statements at issue in Camp and Shapiro that employment was "at-will," especially in light of the facts that this statement in the policy manual is followed by a statement that employment will not be terminated "arbitrarily"; that Bergelson was never required to sign an acknowledgment or contract specifying that his employment was at will; and that it is not clear whether Bergelson had ever received a copy of the policy manual.
 
 
 15
 Moreover, even assuming that Laidlaw's policy manual became part of the terms of employment between Laidlaw and Bergelson, Laidlaw ignores its statement in the policy manual that termination of employees will not be "arbitrary." As Bergelson points out, employment that may not be terminated "arbitrar[ily]," is arguably employment that may be terminated only for "cause." Therefore, Laidlaw's policy manual raises, if anything, more questions as to whether employment was at will or could only be terminated for cause. See Walker v. Blue Cross, 4 Cal.App.4th 985, 6 Cal.Rptr.2d 184, 189 (Cal.Ct.App.1992) ("[W]here the employment relationship has not been reduced to an integrated written agreement, signed by the employee, language in the handbook that there is an at-will employment relationship does not establish the nature of the relationship as a matter of law."); Wilkerson v. Wells Fargo Bank, Nat'l Assoc., 212 Cal.App.3d 1217, 261 Cal.Rptr. 185, 191 (Cal.Ct.App.1989) (rejecting the employer's argument that express at-will provisions in its employee handbook precluded a contrary, implied promise as a matter of law and finding that because the employer and employee had not reduced their employment relationship to an integrated writing, the employee handbook was simply a factor to be considered by the jury in determining the existence and content of the employment agreement).
 
 
 16
 Furthermore, as concluded previously, Bergelson presented sufficient evidence to raise a triable issue of fact as to whether Laidlaw's articulated reason for his termination was pretextual. The district court's grant of summary judgment on Bergelson's breach of implied employment contract claim was therefore erroneous.
 
 
 17
 Finally, because Bergelson's breach of contract claim survives, his claim for breach of the covenant of good faith and fair dealing also survives. See Walker, 6 Cal.Rptr.2d at 191-92 (holding that, by raising a triable issue of fact on the breach of contract claim and as to whether the reasons given for her termination were pretextual, employee raised a triable issue as to the breach of the implied covenant of good faith and fair dealing).
 
 E. After-Acquired Evidence
 
 18
 The after-acquired evidence doctrine is a defense asserted by an employer to shield it from liability or to limit available relief where, after an employee is unlawfully terminated, the employer learns for the first time about employee misconduct or fraud that would have led to the discharge in any event. Camp, 41 Cal.Rptr.2d at 335. The doctrine does not, however, bar an employee from bringing a claim for wrongful termination in every case where there is after-acquired evidence of employee wrongdoing. See id. Rather, the determination of whether after-acquired evidence of employee wrongdoing will bar a wrongful termination claim depends on the specific facts of the case and the type of employee wrongdoing at issue. See id.; Cooper v. Rykoff-Sexton, Inc., 24 Cal.App.4th 614, 29 Cal.Rptr.2d 642 (Cal.Ct.App.1994).
 
 
 19
 Although Laidlaw argues that Bergelson's wrongdoing "went to the heart of his employment relationship with Laidlaw" and should therefore be barred, Bergelson presented evidence that it was not uncommon for employees, with Laidlaw's knowledge, to operate businesses that could be deemed "in competition" with Laidlaw; that Webster knew of, and approved, Bergelson's formation of the very corporation that Laidlaw now complains of; and that the corporation did not, in fact, compete with Laidlaw. Bergelson's evidence, at a minimum, raised a triable issue of fact as to whether Bergelson's conduct could even be classified as "wrongdoing," let alone whether it went to the heart of the employment relationship. The district court's finding that Bergelson's wrongful termination claims were barred by after-acquired evidence was therefore erroneous.[3]
 
 F. Retaliation Claim
 
 20
 Laidlaw argues that Bergelson has waived his retaliation claim because he failed to sufficiently raise it before the district court. Laidlaw relies on the fact that its motion for summary judgment "did not address the merits of Bergelson's retaliation claim, but rather sought to bar it by virtue of the after-acquired evidence defense," and that Bergelson did not bring a cross-motion for summary judgment on the retaliation issue. Laidlaw's argument is flawed.
 
 
 21
 The district court granted summary judgment on Bergelson's retaliation claim because (1) it found that Bergelson had failed to raise an issue of fact on whether Laidlaw's articulated reason for the termination was pretextual, and (2) it found Bergelson's entire action barred by the after-acquired evidence doctrine. As stated above, Bergelson did raise a triable issue of fact on whether Laidlaw's articulated reason was pretextual, and Bergelson's action is not barred by the after-acquired evidence doctrine. The bases articulated by the district court for granting summary judgment are, therefore, incorrect.
 
 
 22
 Furthermore, although we can affirm a grant of summary judgment on any bases supported by the record, Papike v. Tampbrands, Inc., 107 F.3d 737, 744 (9th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 166, 139 L.Ed.2d 110 (1997), Laidlaw has not even argued that there is another ground on which to affirm the grant of summary judgment on the retaliation claims. Laidlaw has, therefore, waived any argument that Bergelson failed to raise a triable issue of fact on the merits of his retaliation claim. See United States v. Tisor, 96 F.3d 370, 376 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1012, 136 L.Ed.2d 889 (1997); Collins v.. City of San Diego, 841 F.2d 337, 339 (9th Cir.1988).
 
 CONCLUSION
 
 23
 The district court's grant of summary judgment is reversed. The case is remanded for further proceedings consistent with this memorandum disposition. The district court is directed to vacate its order granting summary judgment as well as its order denying the motion to amend, and to reconsider the motion to amend in light of this memorandum disposition.
 
 
 24
 REVERSED and REMANDED with instructions.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The district court also granted summary judgment on the religious discrimination claims because it found them barred for failure to include such claims in the DFEH charge. As to the religious discrimination claim based on the discharge of Bergelson, this finding is clearly in error. The DFEH charge included a claim that Bergelson had been "laid off" on the basis of his "religion." As to the harassment aspect of the religious discrimination claim, as concluded above, this claim is not barred by the exhaustion doctrine
 
 
 [2]
 Although the merits of the pending motion to amend are to be addressed first by the district court, we note that the motion does not appear to be entirely without merit. The complaint did allege, albeit in a summary fashion, that Bergelson had been subjected to a hostile work environment where religious epithets were frequently leveled at him. This was sufficient to put Laidlaw on notice that Bergelson was claiming religious discrimination
 Moreover, it is clear that Laidlaw believed Bergelson had made a claim of religious discrimination. Laidlaw requested discovery of documents supporting Bergelson's claim that he was the subject of "derogatory comments" and documents containing "any religious or nationality epithets"; Laidlaw propounded a special interrogatory regarding Bergelson's allegation of a hostile work environment, in response to which Bergelson specified anti-semitic comments; during an extended telephone conversation between counsel for Laidlaw and Bergelson, Laidlaw's counsel specified that she wanted to limit interrogatories to complaints of employees employed in the western region regarding anti-semitic statements made by the same persons Bergelson claimed to have made anti-semitic remarks to him; officers and employees of Laidlaw were deposed on discrimination issues involving anti-semitism; Laidlaw's reply to Bergelson's opposition to Laidlaw's motion to continue the trial contained the following statement: "Prior [to Wallack's deposition], Wallack and Laidlaw had presented a unified defense to Plaintiff's claims of wrongful termination based upon age and religious discrimination"; in opposing a motion to compel discovery, Laidlaw argued that the documents Bergelson sought to compel "have nothing to do with plaintiff's claim that he was a victim of age, religious or other discrimination"; and, in opposing another discovery motion, Laidlaw stated that "Plaintiff claims he was wrongfully terminated from Laidlaw because of his age and his religion."
 
 
 [3]
 Both parties cite O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 759 (9th Cir.1996), in support of their various arguments. O'Day does not hold, as Laidlaw would have us believe, that a sworn affidavit from a human resources representative stating that the employer would have terminated the employee if it had known of the employee's misconduct is sufficient to bar any recovery under the after-acquired evidence doctrine. To the contrary, O'Day explicitly recognizes that a wrongful termination claim brought under federal law is not barred by after-acquired evidence of employee wrongdoing. See id. at 759. The after-acquired evidence does, however, bear on the specific remedy that the employee is entitled to. See id. Because the remedy available to Bergelson is not at issue in this appeal, the holding of O'Day is inapplicable