Roger Joseph BEAULIEU, Plaintiff,

v.

**NORTHROP GRUMMAN CORPORATION,**
**Defendant.**

**Roger Joseph Beaulieu, Plaintiff,**

v.

**Adecco Employment Services, Inc., Defendant.**

**CIV. Nos. 99–537 ACK, 99–538 ACK.**

United States District Court, D. Hawai'i.

Sept. 28, 2000.

Roger Joseph Beaulieu, Mililani, HI, pro se.

William C.H. Jarrett, Honolulu, HI, for plaintiff.

Terry E. Thomason, Jonathan A. Swanson, Carlsmith Ball Wichman Murray Case Mukai & Ichiki, Honolulu, HI, for Northrop Grumman Corporation.

Gary Y. Shigemura, Law Offices of Gary Y. Shigemura, Honolulu, HI, for Adecco Employment Services, Inc.

Junsuke Otsuka, Law Offices of Gary Y. Shigemura, Randall N. Harakal, Harakal

& Hoshino Law Offices, Honolulu, HI, for Adecco, fka TAD Technical Services, Inc.

### *ORDER GRANTING IN PART DEFENDANT ADECCO EMPLOYMENT SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT NORTHROP'S MOTION FOR SUMMARY JUDGMENT, IN WHICH DEFENDANT ADECCO JOINS, AS TO ALL CLAIMS.*

KAY, District Judge.

### *BACKGROUND*

This case arises out of Plaintiff Roger Joseph Beaulieu's ("Plaintiff") termination of employment with Defendants ADECCO Employment Services, Inc. ("ADECCO") and Northrop Grumman Corporation ("Northrop"). It was disputed whether Northrop was Plaintiff's employer. Plaintiff alleges both federal and state law claims of disability discrimination, harassment, retaliation, age discrimination, and various state tort law violations.

In 1993, Plaintiff executed an employment contract with Kirk Mayer, Inc. (predecessor to ADECCO), a staffing agency, that provided workers to Westinghouse (predecessor to Northrop). Plaintiff was originally assigned to a Northrop facility in Newport, RI, then transferred to New London, CT, and in September, 1993 was transferred to Pearl Harbor, HI, where he worked as an ADECCO employee for ADECCO's client Northrop until his termination on July 29, 1997. Plaintiff worked at the Progressive Depot Level Repair (PDLR) facility in Pearl Harbor. Plaintiff was assigned to provide the support services required by Northrop to fulfill Northrop's 541 ATE Contract with the Navy.

While at the PDLR facility, Plaintiff's salary, employment benefits, and tax withholdings were paid by TAD Technical Services (successor to Kirk Mayer, Inc. and predecessor to ADECCO). Plaintiff's direct supervisors were Northrop employees. Plaintiff's supervisors set his working hours, assigned him projects, and reported disciplinary problems to ADECCO.

Plaintiff was diagnosed with Type II, non-insulin dependant diabetes in 1990. Plaintiff controls his diabetes with exercise, diet, maintaining set intervals between meals, and also takes a medication called *Glucophage*. Plaintiff tries to always take his medication approximately 30 minutes prior to eating (although the instructions for *Glucophage* advise taking the medication with one's meals). Arriving at work 10–15 minutes after 7:00 (when other employees arrive at work) allowed Plaintiff to take his medication 30 minutes before eating and maintain his customary interval between breakfast and lunch.

On or about December 1996, Northrop employee Dennis Holt became the Plaintiff's supervisor. Prior to Mr. Holt's assignment to the PDLR facility, Plaintiff had worked on a "flex schedule" that allowed him to arrive to work later than the other employees (usually 10–15 minutes). After Mr. Holt became supervisor, he verbally reprimanded Plaintiff for arriving late to work. Plaintiff explained that he arrived late due to his eating schedule and the slowness of the restaurant he frequented. Mr. Holt suggested that the Plaintiff either eat at home, get take-out, or eat on the base. It was Mr. Holt's practice to require his entire staff to meet with him every morning at 7:00 a.m. On January 14, 1997 Mr. Holt wrote a memorandum to Plaintiff concerning his chronic tardiness. Plaintiff contacted Mr. Holt's supervisor, Northrop employee Lee Smalley and another Northrop employee, Manuel Macedo, in order to request permission to arrive at work later than fellow employees. Both Smalley and Macedo denied Plaintiff's re-

quest. On February 18, 1997, Mr. Holt wrote a second memorandum to Plaintiff because Plaintiff continued to arrive late to work. Thereafter Plaintiff arrived to work on time.

On June 6, 1997, Mr. Holt asked Plaintiff to stop work on one project and complete another task. In the presence of visiting officials from the Naval Undersea Warfare Center Newport Division, Newport, Rhode Island, Plaintiff responded to Mr. Holt's request by yelling "You are a fucking asshole" at Mr. Holt. The Naval Undersea Warfare Center Newport Division, Newport, Rhode Island supervises all Naval operations at the PDLR facility, including work performed under Navy contracts. Mr. Holt prepared a memorandum documenting the June 6, 1997 incident with the Plaintiff and forwarded it to Mr. Smalley. Mr. Smalley forwarded the memorandum to Bruce Ingleright of ADECCO.

On July, 29, 1997, in the presence of Mr. Holt and Mr. Smalley, Plaintiff was terminated by Mr. Orelli of ADECCO by telephone. Plaintiff was 61 years of age at the time of his termination.

In 1997, the Department of the Navy began to phase out the 541 ATE. Northrop's 541 ATE Contract with the Navy was not renewed and terminated in September 1997. Northrop did not hire any employees to complete the work that Plaintiff was responsible for under the 541 ATE Contract.

On July 30, 1997, Plaintiff filed charges against Northrop with the EEOC and received a Right to Sue letter on May 4, 1999. On July 28, 1999 Plaintiff filed an Employment Discrimination Complaint. Plaintiff filed a First Amended Complaint on August 20, 1999.

On March 4, 1998, Plaintiff filed charges against ADECCO with the EEOC and received a Right to Sue Letter on May 24, 1999. On July 28, 1999, Plaintiff filed an Employment Discrimination Complaint. On August 20, 1999, Plaintiff filed a First Amended Complaint.

On November 3, 1999 Plaintiff's two employment discrimination suits were consolidated. Plaintiff filed a Second Amended Complaint on March 14, 2000 after the consolidation.

Defendant Northrop filed the instant Motion for Summary Judgment on August 18, 2000 and filed a Separate and Concise Statement on Facts in support on the same day. Defendant ADECCO filed the instant Motion for Summary Judgment on August 21, 2000 and filed a Separate and Concise Statement of Facts in support on the same day. On August 22, 2000, ADECCO filed a Partial Joinder in Northrop's Motion for Summary Judgment. Plaintiff filed Memorandums in Opposition to Northrop and ADECCO's Motions for Summary Judgment on September 4, 2000 and filed Separate Concise Statements of Fact in support the same day. Plaintiff filed an Errata Re: Memorandum in Opposition to Northrop's Motion for Summary Judgment on September 6, 2000 and a Separate and Concise Statement of Fact on the same day.

On September 12, 2000, Defendant ADECCO filed a Stipulation for Partial Dismissal with Prejudice for Counts III, IV, V, VI, VII, VIII, X, XI, and XIII as between Defendant ADECCO and Plaintiff.

### STANDARD OF REVIEW

### MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). The standard for summary adjudication is the same. *See State of Cal.*

*v. Campbell,* 138 F.3d 772, 780 (9th Cir. 1998). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *See id.* at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *See id.* at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *See T.W. Elec. Serv.,* 809 F.2d at 630–31.

### DISCUSSION

**A. TIMELINESS OF CLAIMS AGAINST ADECCO UNDER H.R.S. CHAPTER 378, (COUNT II).**

 Plaintiff mailed his Complaint against ADECCO to the EEOC on March 4, 1998, 218 days after his termination. The EEOC, acting under the Worksharing Agreement, forwarded the complaint to the HCRC, which received it on or about March 12, 1998. On March 23, 1998 the HCRC rejected the claim as untimely, as it was outside the 180 day filing deadline for state claims. *See* H.R.S. § 378–4. The

Court finds that the untimely filing of the complaint with HCRC bars any state law claims for discrimination against ADEC-CO.

Accordingly, the Court GRANTS Defendant ADECCO's Motion for Summary Judgment as to Count II.

## B. TIMELINESS OF EEOC FILING AND FEDERAL CLAIMS UNDER THE ADA AGAINST ADECCO (COUNT I).

■ Defendant ADECCO contends that Plaintiff's complaint with the EEOC was also time-barred because he did not comply with the statutory requirements for filing. In order to file a claim with the EEOC under Title VII and the ADA, complainants must file the complaint with the EEOC within 180 days after the last discriminatory act. 42 U.S.C. § 2000e–5(e). However, if the complainant has instituted proceedings with a state or local agency with authority to grant or seek relief from such practices, complainants are allowed 300 days to file with the EEOC. *Id.*

Plaintiff filed his complaint against ADECCO on March 5, 1998, 219 days after he was terminated from employment, the last alleged discriminatory act. The complaint was promptly forwarded to the HCRC by the EEOC on or about March 12, 1998, pursuant to the Worksharing Agreement between the HCRC and the EEOC. ADECCO contends that the 300 day extension period for filing with the EEOC was not triggered because the complaint was not first filed within the state agency's filing deadline of 180 days. This argument fails.

The Ninth Circuit rejected the argument that state proceedings must be commenced within 180 days to trigger the 300–day extension and stated that "the deferral state exception requires only that state proceedings be instituted before the expiration of the 300–day extended filing peri-od." *Wiltshire v. Standard Oil Company of California*, 652 F.2d 837 (9th Cir.1981). State proceedings are initiated when the EEOC forwards the complainant's letter to the state agency, and it is immaterial whether the Complaint is sent first to the EEOC and forwarded to the State, or sent first to the State agency and forwarded to the EEOC. *Mohasco Corp. v. Silver*, 447 U.S. 807, 816, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). A Complainant can avail himself of the 300–day extension regardless of whether he has missed the state agency's filing deadline. *See Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir.1999) (citing *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 123, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988)). The Plaintiff's March 5, 1998 filing was well within the 300–day time period.

Accordingly, the Court DENIES Defendant ADECCO's Motion for Summary Judgment as to Count I.

## C. PLAINTIFF'S STATUS AS AN EMPLOYEE OF NORTHROP CORPORATION.

■ Defendant Northrop contends that it is not the Plaintiff's employer and therefore Plaintiff cannot maintain his claims of discrimination against Northrop. Plaintiff was hired by ADECCO, a staffing agency that supplied workers to Northrop. *See* Kirk Mayer, Inc. Employment Agreement.

Plaintiff's status as an employee of ADECCO does not foreclose the possibility that he is also an employee of Northrop. The EEOC issued a Notice on December 3, 1997 regarding the status of workers who were placed in jobs by temporary employment agencies and staffing firms. *See* EEOC Notice 915.002 *Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms*, December 3, 1997 ("EEOC No-

tice"). The EEOC recognizes that both a staffing firm and a client of a staffing firm may be employers for purposes of Title VII. *See* EEOC Notice at 2, 7. Therefore, ADECCO and Northrop can both, simultaneously, be Plaintiff's employer.

In *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581, (1992), the Supreme Court stated that common law agency principles determine whether an individual is an employee for an ERISA benefits claim. The *Darden* principles were extended to other statutes that contain the term employee, but do not further define the term. *See Adcock v. Chrysler Corp.,* 166 F.3d 1290 (9th Cir. 1999). The Ninth Circuit has determined that the purpose of the *Darden* factors is to determine how much control the hiring party exerts over the manner in which work is accomplished. *See Barnhart v. New York Life Ins. Co.,* 141 F.3d 1310, 1312 (9th Cir.1998).

■ Northrop exercised control over the manner in which work was accomplished by Plaintiff. Northrop supervisors set the working hours and attendance policy. *See* Swanson Aff. ¶ 20, Ex. R.; Swanson Aff. ¶ 28, Ex. Z. Northrop employees reviewed Plaintiff's work. *See* Swanson Aff. ¶ 9, Ex. G. Plaintiff was required to follow the instructions of and report to a supervisor who was the employee of Northrop. *See* Holt Dec. ¶ 22; Swanson Aff. ¶ 42, Ex. NN. While Northrop did not sign the Plaintiff's paycheck, nor provide for benefits, it did control the manner in which the Plaintiff worked and as such was the Plaintiff's employer. The Court finds that Northrop was Plaintiff's employer (ADECCO does not contend that they were not Plaintiff's employer).

**1.** The Court will consider the claims under the ADA and HRS § 378–2 together, as the Hawaii Supreme Court looks to Federal Law to interpret state employment discrimination

## D. DEFINITION OF DISABLED UNDER THE ADA AND H.R.S. CHAPTER 378

For a claim of employment discrimination under the ADA and H.R.S. § 378–2 to survive summary judgment, a claimant must present sufficient evidence to establish that he: (1) is a disabled person within the meaning of the ADA; (2) is otherwise qualified to perform the job that he holds; and (3) has suffered an adverse employment decision because of his disability.[1] *See Sanders v. Arneson Products, Inc.,* 91 F.3d 1351, 1353 (9th Cir.1996).

### 1. Definition of Disabled Under the ADA.

To show that an individual has an actual disability under the ADA and HRS § 378–2, he must demonstrate that he 1) has a "physical or mental impairment" that 2) "substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2)(A).

The EEOC regulations define an impairment as "any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one of the body's systems... or any mental or psychological disorder..." 29 C.F.R. § 1630.2(h). As a diagnosed medical condition, diabetes qualifies as a disorder under the ADA and H.R.S. § 378–2. However, a showing that a person has a disorder does not automatically mean that the person is disabled under the ADA. A further showing that the disorder substantially limits a major life activity is required. *See Frank v. United Airlines,* 216 F.3d 845, 857 (9th Cir.2000) (affirming summary judgment where plaintiffs failed to present evidence that eating disorder substantially limited a

law. *See Furukawa v. Honolulu Zoological Society,* 85 Hawai'i 7, 13, 936 P.2d 643 (Haw. 1997); *Bradley v. Harcourt, Brace and Co.,* 104 F.3d 267, 271 (9th Cir.1996).

major life activity). Additionally, the definition of disability does not apply to a class of people, but to each individual separately, and must be determined based on "whether an impairment substantially limits the 'major life activities' of such an individual." *Sutton v. United Airlines,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (citing *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)).

■ To be "substantially limited" a disability must "significantly restrict the duration, manner or condition under which an individual can perform a major life activity as compared to an average person in the general population." 29 C.F.R. § 1630.2(j)(1)(i), (ii). A major life activity is a function such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *See Frank,* 216 F.3d at 857; 29 C.F.R. § 1630.2.

Plaintiff claims that the major life activities of eating, working, walking, and breathing are substantially limited by his diabetes. The Court will discuss each in turn.

There is no doubt that a person with diabetes must carefully control his diet. All diabetic patients must carefully monitor their diet. As this necessity applies to all diabetics, to hold that dietary restrictions constitute a substantial limitation of a major life activity would create a per se rule that diabetes is a disability under the ADA. A per se rule that a disease itself is a disability is contrary to the intent of the ADA. *See* 29 C.F.R. pt. 1630, App. § 1630.2(j) ("the determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."); *see also Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (declining to consider

whether HIV infection is a per se disability under the ADA); *Sutton,* 527 U.S. at 480, 119 S.Ct. 2139 ("the guidelines approach would create a system in which persons often must be treated as members of a group of people with similar impairments... this is contrary to both the letter and the spirit of the ADA").

Several other jurisdictions have considered whether or not dietary restrictions can constitute a substantial limitation on a major life activity. *See Weber v. Strippit, Inc.,* 186 F.3d 907 (8th Cir.1999) (holding that dietary restrictions due to a heart condition was only a moderate limitation on a major life activity); *Land v. Baptist Medical Center,* 164 F.3d 423 (8th Cir. 1999) (stating that although allergy impairment affected types of food plaintiff could eat it did not substantially limit a major life activity); *Lawson v. CSX Transportation,* 101 F.Supp.2d 1089 (S.D.Ind.1999) (distinguishing dietary restrictions required by diabetes from actual physical inability to eat). This Court agrees that while the Plaintiff's diabetes requires him to monitor his diet, he is not substantially limited in a major life activity.

Plaintiff also alleges that he is substantially limited in the major life activity of working. With respect to working, "substantially limited" means that one is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Plaintiff has not presented any evidence that he is limited in the type of job which he can perform due to his diabetes. Plaintiff further alleges that he is substantially limited in his ability to walk and breathe. Again the Plaintiff has failed to present the Court with any evidence that he was substantially limited in these major life activities

while an employee of ADECCO and Northrop.[2]

The Court finds that Plaintiff is not substantially limited in any major life activity, and therefore is not disabled under the ADA or H.R.S § 378–2. Plaintiff cannot satisfy the first prong of a prima facie case under the ADA. Accordingly, the Court GRANTS Defendant ADECCO and Northrop's Motion for Summary Judgment on Counts I, II.

As the Court finds that Plaintiff is not disabled under the definition of the ADA or H.R.S. § 378–2, and cannot meet the first prong of the prima facie test under the ADA, the Court finds it unnecessary to address whether or not the Defendants provided reasonable accommodation[3] for Plaintiff's diabetes or whether Plaintiff suffered an adverse employment action because of his diabetes.

### E. *DISABILITY HARASSMENT CLAIMS*

As the Court has found that Plaintiff is not disabled under the definition of the ADA, he cannot make out a prima facie case of disability harassment. Plaintiff is not a qualified individual with a disability, and therefore is not afforded the protections of the ADA, including the ability to state a claim for hostile work environment disability harassment. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75,

118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (Plaintiff bears the burden of demonstrating that conduct at issue occurred "because of" his protected status).

Accordingly, the Court GRANTS Defendant Northrop's Motion for Summary Judgment as to Counts III, IV[4].

### F. *RETALIATION CLAIMS*

1. Exhaustion of Administrative Remedies for a Claim of Retaliation

Northrop claims that Plaintiff's Retaliation Claim is barred because he has not exhausted his administrative remedies. In Plaintiffs original EEOC Complaint, he did not check the box marked "retaliation" under Cause of Discrimination. Northrop uses this fact to assert that therefore Plaintiff has not exhausted his administrative remedies.

However, while Plaintiff did not technically file a retaliation claim with the EEOC on his original filing, his retaliation claim is based entirely on allegations contained in the original filing and does not depend upon new or different facts not considered by the EEOC complaint. In a subsequent letter to the Director of the EEOC, Plaintiff refers to "fear of further retaliation", thus putting the EEOC on notice that Plaintiff claimed he had been retaliated against. *See* Letter to Mr. Timothy Riera dated April 13, 1999. The

---

2. Plaintiff stated in his deposition that on the evening before his deposition, July 24, 2000, he got a cramp in his leg while walking, but cannot definitively attribute it to his diabetes.

3. The Court notes that while Northrop recommended to Plaintiff that he eat earlier, get take-out, or eat on base, these suggestions do not constitute accommodations as it is Plaintiff and not the employer who would have to change routines. These suggestions are nothing more than ideas for how Plaintiff could manage to arrive to work on-time without the employer having to make any accommodations. The Court further notes, however, that

Plaintiff's suggested accommodation, being allowed to arrive to work 10–15 minutes late would not prevent Plaintiff from suffering a diabetic low, as he stated that his diabetic lows happened 1—1.5 hours prior to lunch and therefore his own suggested accommodation is not reasonable. Plaintiff failed to explain why he could not re-arrange his breakfast schedule to arrive to work 15 minutes earlier—that is—on-time.

4. Plaintiff stipulated to the dismissal of Counts III and IV against Defendant ADECCO.

Court finds that the retaliation claim is "like or reasonably related to the substance of charges timely brought before the EEOC." *Williams v. Little Rock Municipal Water Works*, 21 F.3d 218, 222 (1994). Therefore, Plaintiff has exhausted his administrative remedies and is not barred from bringing the retaliation claim.

### 2. Prima Facie Case of Retaliation

■ Section 704(a) of Title VII provides in relevant part that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [that employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge...under this subchapter." 42 U.S.C. § 2000e–3(a). In order to establish a prima facie case of retaliation, Plaintiff must show that 1) he engaged in a protected activity; 2) he was thereafter subjected to an adverse employment action; and 3) that a causal connection exists between the two. *See Trent v. Valley Electric Ass'n*, 41 F.3d 524, 526 (9th Cir.1994).

Northrop conceded at Oral Argument that Plaintiff's phone call to Mr. Holt's supervisors, Mr. Smalley and Mr. Macedo, requesting that his diabetes be accommodated by being allowed to arrive at work 10–15 minutes late constituted a protected activity if Plaintiff believed that he had a legal right to be accommodated. The Court finds that the phone call satisfies that first prong of the prima facie case test. However, Plaintiff has failed to allege facts sufficient to demonstrate a causal connection between that phone call and his eventual termination.

The phone call which constitutes the protected activity occurred on or about February 1997, almost six full months prior to Plaintiff's termination. Plaintiff concedes that after that phone call he stopped

requesting any accommodation or opposing Northrop's requirement that he arrive to work on time. Plaintiff presents no evidence that his termination was linked to his request for accommodation other than the fact that he did request to be accommodated. *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081 (9th Cir. 1996) ( "Mere allegation and speculation" is insufficient to establish a causal connection); *Forsberg v. Pacific Northwest Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir.1988) (purely conclusory allegations of alleged discrimination will not bar summary judgment). Northrop, on the other hand, presents undisputed facts that Plaintiff yelled obscenities at his Supervisor in front of visiting Naval officials, and that the support services that the Plaintiff performed on the 541 ATE Contract were discontinued when the Contract was not renewed. Plaintiff offers nothing to rebut this showing of non-retaliatory reasons for termination. *See Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir.1982) (stating that if defendant produces evidence sufficient to dispel an inference of retaliation, plaintiff has the burden of showing that the asserted reason was pretextual).

The Court finds that Plaintiff has not met his burden of showing a causal link between the protected activity and his termination and thus cannot state a prima facie case for retaliation. Accordingly, the Court GRANTS Northrop's Motion for Summary Judgment as to Claims V and VI [5].

### G. *AGE DISCRIMINATION CLAIMS*

■ To survive summary judgment for a claim of age discrimination the plaintiff must establish that: (1) he was a member of a protected class; (2) he was performing his job in a satisfactory manner; (3)he suffered an adverse employment action;

---

**5.** Plaintiff stipulated to the dismissal of Counts V and VI against Defendant ADECCO.

(4) he was replaced by a substantially younger employee with equal or inferior qualifications. *See Wallis v. J.R. Simplot Co.,* 26 F.3d 885. Prongs one and three are not contested by the Defendants.

Plaintiff need not show that he was replaced by a younger employee, because Plaintiff was not replaced at all. Where a terminated employee is not replaced, but current employees assume the Plaintiff's former duties, the case should be analogized to a reduction of workforce situation in which Plaintiff is not required to show that he was replaced. *See e.g. Bergelson v. Laidlaw Transit, Inc.,* 141 F.3d 1173, 1998 WL 132970 (9th Cir.1998). Plaintiff can make a prima facie showing of age discrimination where he is not replaced by demonstrating, "through circumstantial, statistical or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Wallis,* 26 F.3d at 891. An inference of age discrimination can be made by showing the employer "had a continuing need for his skills and services in that his various duties were still being performed." *Wallis,* 26 F.3d at 891. Plaintiff has produced evidence that ADECCO placed an advertisement for his former position after the termination.[6] *See* Beaulieu Dec., Ex. F. This evidence is sufficient to create an inference of age discrimination.

■ Defendants state that Plaintiff cannot satisfy prong two of the test, that Plaintiff was a satisfactory employee and offer undisputed evidence that Plaintiff was repeatedly late for work and involved in a verbal altercation with his supervisor in front of visiting Naval officials. Plaintiff does not address prong two of the test in his Motion in Opposition. *See* Mot. in Opp. at 21. Considering the failure of Plaintiff to address prong two of the prima facie test for an ADEA claim, he cannot satisfy the test for a prima facie claim of age discrimination.

In the alternative, the Court finds that Plaintiff has not met his burden of showing that Defendant's stated reasons for his termination were pretextual. Once the prima facie showing is met, the Defendant can rebut the showing by demonstrating that there was a non-discriminatory reason for his dismissal. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (stating that upon a showing of a non-discriminatory reason for its employment decision the presumption of unlawful discrimination "simply drops out of the picture"). To rebut the presumption the Defendants present undisputed evidence of the Plaintiff's repeated tardiness to work and the confrontation with Supervisor Holt[7] as the reason for his termination. In addition, the Defendant offers undisputed evidence that the 541 ATE Contract was discontinued and not renewed. *See* Holt Dec. ¶ 24, Macedo Dec. ¶ 17, Smalley Dec. ¶ 18. Because Defendants offer this legitimate, nondiscriminatory reason for Plaintiff's termination, it has carried its burden of production, and the presumption of discrimination disappears. There is no need for an assessment of the credibility of the Defendants at this point. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

---

**6.** Defendant Northrop disputes that the advertisement was for Plaintiff's former position and states that Plaintiff did not have the academic credentials to qualify for the advertised position. *See* Defendant Northrop's Reply, filed September 11, 2000.

**7.** Plaintiff admits that he was repeatedly late to work and that on June 6, 1997 he yelled "You are a fucking asshole" at his supervisor, Mr. Holt. *See* Deposition of Roger Beaulieu at 95.

The Plaintiff must meet his burden of showing that the Defendant's reason is pretextual by presenting evidence beyond that used to meet his prima facie burden. *See Wallis,* 26 F.3d at 892. The only evidence that the Plaintiff has presented to show that his termination was due to age discrimination is the bald assertion that he was the oldest employee at the PDLR facility. Plaintiff failed to present any evidence in making his prima facie case that he was performing his job in a satisfactory manner. The Court finds that this assertion standing alone is insufficient to withstand a motion for summary judgment. There is no extrinsic evidence that the Defendants terminated Plaintiff due to his age [8].

Accordingly, the Court GRANTS Defendant Northrop's Motion for Summary Judgment as to Claims VII and VIII [9].

### H. *NON-STATUTORY THIRD-PARTY TORT CLAIMS* [10]

1. *ADECCO's Motion For Summary Judgment on Tort Claims (Counts IX and XII).*

 ADECCO argues that Plaintiff's tort claims are barred by the Statue of Limitations, as the Plaintiff first asserted personal injury tort claims in his Second Amended Complaint filed on March 14, 2000, more than two years after his termination.

However, Fed.R.Civ.P. 15(c), allows for claims brought in an amended complaint to relate back to the date of the original filing so long as they "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Plaintiff's original complaint was filed well within the two year statute of limitations. While the personal injury claims are a new cause of action, the Plaintiff has not alleged any facts beyond those presented in his original complaint. Fed. R.Civ.P. 15(c) is to be liberally applied. *See Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1260 (9th Cir.1982). The new causes of action clearly arise out of the same transaction, and therefore relate back to the filing of the original complaint and are not barred by the statute of limitations.

2. *Aiding and Abetting Discrimination*

As the Court has found that Northrop and ADECCO did not discriminate against Plaintiff under the ADA, ADEA, or H.R.S. § 387–2, the Defendants cannot have violated the aiding and abetting statute. *See Woods v. Graphic Communications,* 925 F.2d 1195, 1200 n. 3 (9th Cir.) (stating "to violate the statute, a party must partici-

---

8. In 1993 when Plaintiff was hired to work at the PDLR Facility, he was 57 years old, which suggests that Northrop was not biased against older workers. *See McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1129 (10th Cir. 1998) (stating that the fact that employee was hired at age 51 undercut allegation of general bias against workers over the age of 40); *Brown v. McDonnell Douglas Corp.,* 113 F.3d 139, 142 (8th Cir.1997) ("simply incredible" to assume that defendant that had hired plaintiff at age 53 developed an aversion to older employees); *Suttell v. Manufacturers Hanover Trust Co.,* 793 F.Supp. 70, 74 (S.D.N.Y.1992).

9. Plaintiff stipulated to a dismissal of claims VII, VIII against Defendant ADECCO.

10. The Court notes that in his Opposition to Defendant Northrop's Motion for Summary Judgment, Plaintiff stated that "[i]f the Court agrees and hold that Northrop and Adecco qualify as statutory employers, Plaintiff concedes that the following causes of actions [Aiding and Abetting, Intentional Interference, Negligent Retention and Supervision, and Negligent Infliction of Emotional Distress] should be dismissed." *See* Mem. in Opp. at 22. The Court will nonetheless discuss the reasoning behind its grant of Summary Judgment.

pate in a discriminatory activity for the purposes of discriminating.")

Accordingly, the Court GRANTS Defendants ADECCO and Northrop's Motion for Summary Judgment as to Claim IX.

### 3. *Intentional Interference*

 In order to state a claim for intentional interference, the Plaintiff must show that the defendant induced a third party to breach a contract absent justification on the defendant's part. *See Burgess v. Arita*, 5 Haw.App. 581, 704 P.2d 930, 939 (1985). The Plaintiff bases his claim on his belief that he was terminated by ADECCO under Northrop's instructions and therefore Northrop interfered with his employment contract with ADECCO. However, as the Court has found that the Plaintiff has not been discriminated against under the ADA, ADEA, or H.R.S. § 387–2, the Plaintiff cannot produce any evidence that any action taken by Northrop in recommending Plaintiff's termination was "absent justification or motivated by illegal intent." *Id.*

Accordingly, the Court GRANTS Defendant Northrop's Motion for Summary Judgment as to Claim X[11].

### 4. *Negligent Supervision and Retention (Claim XI) and Negligent Infliction of Emotional Distress (Claim XIII).*

 Under Hawaii law, Worker's Compensation is the exclusive remedy against an employer for employee injuries outside of those related to sexual harassment or sexual assault. *See Ellison v. Northwest Airlines, Inc.*, 938 F.Supp. 1503 (D.Hawai'i 1996); H.R.S. § 386–5 ("the rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee..."). The Court finds that the claims of Negligent Supervision and Retention and Negligent Infliction of Emotional Distress, are both "work injuries" arising from the conditions of Plaintiff's employment. These claims, therefore are all barred by H.R.S. § 386–5. *See Ellison*, 938 F.Supp. at 1515; *Courtney v. Canyon Television & Appliance Rental, Inc.*, 899 F.2d 845, 851 (9th Cir.1990).

Accordingly, the Court GRANTS Defendant Northrop's Motion for Summary Judgment as to Counts XI and XIII.[12]

### 5. *Intentional Infliction of Emotional Distress (Claim XII)*

 In *Furukawa v. Honolulu Zoological Society*, 85 Hawai'i 7, 18, 936 P.2d 643 (1997), the Hawaii Supreme Court held that while the worker's compensation scheme bars a civil action for physical and emotional damages resulting form work related injuries and accidents, claims based on alleged intentional conduct of an employer are not barred. To establish a claim for intentional infliction of emotional distress, a plaintiff must show; 1) the act allegedly causing harm was intentional, 2) that the act was unreasonable, and 3) that the actor should have recognized that the act was likely to result in illness. *See Wong v. Panis*, 7 Haw.App. 414, 772 P.2d 695 (1989). In order to survive summary judgment, Plaintiff must demonstrate that defendant's actions were "without just cause or excuse, beyond the bounds of decency and extreme and outrageous." *Chedester v. Stecker*, 64 Haw. 464, 468, 643 P.2d 532 (1982). Mental distress can only be found "where a reasonable man ... would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Rodrigues*

---

**11.** Plaintiff stipulated to a dismissal of Count X against Defendant ADECCO.

**12.** Plaintiff stipulated to a Dismissal of Counts XI and XIII as to Defendant ADECCO.

*v. State,* 52 Haw. 156, 173, 472 P.2d 509 (1970).

Plaintiff has not demonstrated that Northrop or ADECCO's actions were unreasonable, nor that there actions went beyond all bounds of decency or were extreme and outrageous. *See Wong,* 772 P.2d at 700 ("extreme and outrageous conduct is conduct is not mere insults, indignities, threats, annoyances, petty oppression or other triviality"). Plaintiff has failed to allege any facts that are sufficient to constitute a claim for intentional infliction of emotional distress.

Accordingly, the Court GRANTS Defendants ADECCO and Northrop's Motion for Summary Judgment as to Count XII.

## I. *PUNITIVE DAMAGES*

As none of the Plaintiff's claims survive summary judgment, the Plaintiff is not entitled to an award of punitive damages. Accordingly, the Court GRANTS Defendant ADECCO and Northrop's Motion for Summary Judgment as to an award of Punitive Damages.

### *CONCLUSION*

For the foregoing reasons Court GRANTS Defendant ADECCO's Motion for Summary Judgment on Jurisdictional Defenses as to Claims II and DENIES Defendant ADECCO's Motion for Summary Judgment on Jurisdictional Defenses as to Claims I and XII. The Court GRANTS Defendant Northrop's Motion for Summary Judgment in which Defendant ADECCO has joined, except as to argument IV(A), on ALL COUNTS.

IT IS SO ORDERED.